BECKER'S INVESTMENT AGENCY v. JOHN P. REA, Receiver.[1]

January 21, 1896.

Nos. 9718—(174).

**Discount of Note—Pledge or Sale—Usury.**

Where, for a debt actually due to him, A held the note of the debtor, which he discounted, indorsed, and delivered to B at a rate of discount greater than the rate of interest allowed by law, *held*, the transaction is not necessarily a loan in which the note was delivered as collateral security, but whether or not it is such a loan is a question of fact, to be determined from all the facts and circumstances in the case.

**Same.**

*Held*, further, the transfer of the note may be a valid sale thereof, but whether or not, as a question of law, the obligation of the indorser is usurious, or not enforceable by the indorsee, is not decided.

**Findings Sustained.**

*Held*, the findings and order for judgment are not contrary to the evidence.

Appeal by plaintiff from an order of the district court for Hennepin county, Russell, J., denying a motion for a new trial. Affirmed.

*Hawes & Boggs* and *Jayne & Morrison*, for appellant.

*L. A. Reed* and *Rea, Hubachek & Healy*, for respondent.

CANTY, J.[2] The plaintiff, a corporation, did a loaning business at Rolla, North Dakota. The Bank of New England did a banking business at Minneapolis. During the years 1892 and 1893, plaintiff deposited with the bank a large number of notes made to plain-

[1] Reported in 65 N. W. 928.
[2] Buck, J., did not sit.

tiff by persons residing in the vicinity of Rolla for loans made to them by it, and the bank paid to plaintiff the amount of the notes. The defendant has since been appointed receiver of the bank, and this action is brought to compel the surrender and delivery up to plaintiff of these notes, on the claim that the transactions were loans of money to plaintiff by the bank at the usurious rate of interest of 12 per cent. per annum, and that the notes were so delivered as collateral security for these loans. The defendant, on the other hand, claims that there was no such loan, but that the notes were sold to the bank at a discount amounting to the interest to accrue at the rate of 12 per cent. per annum. This was the rate of interest which all the notes bore, and is legal in North Dakota, where the notes were made. On the trial before the court without a jury, the court found that the transactions were sales of the notes at this rate of discount, and ordered judgment for defendant. From an order denying its motion for a new trial, plaintiff appeals.

On the trial, William H. Becker, the president of plaintiff, testified on its behalf, in substance, that he applied to the bank for a loan, and offered these notes as collateral security, and that A. J. Blethen, the president of the bank, agreed to make such loans, but told him to go home and write the bank about it. This is contradicted by Blethen, who testifies that there was no talk, except about a "line of discounts." Becker returned to Rolla, and on March 29, 1892, wrote Blethen as follows:

"Dear Sir: As stated to you during our conversation while on my visit to your city, we are now keeping our Minneapolis account with the 1st Natl. Bank of your city, but we are desirous of using some of our bills receivable in your city on a line of rediscounts; and if we could arrange with you to rediscount from time to time, say, an amount of our paper not exceeding $1,000, we should be glad to give you our account. Our business at present is small, but is prosperous and growing rapidly, and in time ours will be a desirable account. The paper we would offer you would be three (3) and six (6) months, well secured by first mortgage upon farmers' personal property, and be indorsed by us."

On March 31, Blethen answered as follows:

"I have your letter of the 29th, and, in answer, beg to say that we will file this statement made by you, and be more than pleased

to comply with all the requests therein contained. If I understand you, you want: (1) To open an account, for the city of Minneapolis, with the Bank of New England. (2) You desire the privilege of rediscounting small sums of money, not to exceed $1,000 at any one time. (3) Any discounts which you send to us are to be secured to you by real-estate mortgages, with proper margins, and the paper which you send to us is to be indorsed by your company. (4) Whenever you wish to enlarge this line of credit, you are to get special permission therefor, before calling upon us. We shall be very much pleased to open an account with your people, and shall endeavor, by every fair method, to retain the same, and to please you."

On April 4, Becker answered, accepting this offer, and added: "Our notes which we have to take from our patrons are secured by them by chattel mortgages upon stock, farm implements, and grain, with large margins, and are in small amounts, and we accept none but choice, amply-secured paper; and, in offering you our paper for rediscount, we will only offer you the choicest, and the same will be indorsed by our company, and guarantied by me personally. If this will be satisfactory to you and our account desirable, we will begin business with you as soon as convenient."

On April 11, Blethen replied: "As you say, we shall expect you to send us the very cream of your paper, indorsed by your company and yourself, together with the collateral as such paper may carry to your bank, the same to remain here in our vault until maturity of such paper. It will be necessary for you to keep a memorandum of all such paper, and to see that no rights are lost on account of demand, notice, etc." Both parties agree that during the year 1892 the rate of discount or interest, whichever it was, was 10 per cent. per annum.

On February 20, 1893, at Minneapolis, the parties made an agreement, which appears in the form of a proposition from the plaintiff, as follows: "Bank of New England: We find it necessary to revise our request for rediscounts and accommodations. * * * We therefore desire to make the following statement: Our total needs during the year 1893 will be $5,000. This will include needs of the bank and my own personal, of which sum I now have $900. If this amount be passed to our credit, I shall be able to keep on hand, as a balance to the credit of the Becker's Investment Company, at

least $500, as a minimum deposit, all the time.    I hereby agree that in consideration of this line being increased from three thousand ($3,000) to five thousand dollars ($5,000), to permit the Bank of New England to receive and enjoy the legal rate of interest which the state of North Dakota permits, to wit, twelve per cent.    We also agree to reduce this line of $5,000 to at least the sum of $3,500 on or before the 31st day of December, 1893, so as to have a line in your bank not to exceed $1,500 at that date.    Becker's Investment Agency, pr. W. H. Becker, Pt."    This proposition was accepted by the bank.    All of the notes sent by plaintiff to the bank under this arrangement bore 12 per cent. interest, and were indorsed by plaintiff and Becker, and also contained the following indorsements: "Pay Bank of New England, Minneapolis, Minn., or order, for deposit, account of Becker's Investment Agency, Rolla, N. D."    These notes were usually sent to the bank by mail, with a letter or statement which read: "I herewith inclose you notes as follows for discount: [Then follows a description of the notes.]    Amount, less discount, to be credited to our account."    A short time before the maturity of a number of these notes, plaintiff would request their return, usually in the following language: "Please return, and charge to our account, the following notes:    [Then would follow a description of the notes.]"    Plaintiff kept an account at the bank, and in this account plaintiff was credited with the notes received, and charged with the notes returned.    But the plaintiff never gave any evidence of any indebtedness owing from it to the bank, except the letters and contract aforesaid, and the indorsements on the back of the notes. After the bank failed, plaintiff and Becker, at the request of the receiver, each wrote a guaranty on the back of each of the notes in the receiver's hands.    These are all of the facts which we deem it necessary to recite.

We are of the opinion that the findings of the court and order for judgment are not against the evidence.

If A, for a debt actually due to him, holds the note of the debtor, and discounts, indorses, and delivers it to B at a rate of discount greater than the rate of interest allowed by law, it is not necessarily a loan from B to A, in which the note was delivered to B as collateral security.    The mere fact that A indorses the note does not necessarily stamp the transaction as a loan.    The trial court or jury

may find, from all the circumstances, that it was in fact a loan, and that the form of the transaction was merely a device to evade the usury law. All the courts agree that the transfer of such a note without any obligation on the part of the transferror to pay the same is merely a sale of a chattel, and may be made for any price the parties agree upon. 1 Daniel, Neg. Inst. § 762a. But when the transferror indorses the instrument, so that he is conditionally liable to pay the same, different courts take four different positions: (1) That the transaction is usurious, and both the indorsement and the transfer are vitiated, so that the indorsee cannot sue his indorser, or any prior party, on the note. Id. § 763, and cases cited. (2) That the indorsement is usurious, but the transfer is a valid sale, and that while the transferee cannot maintain a suit against the indorser, he may against all prior parties. Id. § 764, and cases cited. (3) Another class of cases, instead of holding the indorsement to be usurious, hold that it is made merely for the accommodation of the transferee in connection with a valid sale, and that, while the transferee cannot maintain a suit against the indorser, he may against all prior parties. Id. § 765, and cases cited. (4) That the transaction is not usurious, and that the transfer is not only a valid sale, but the indorser is also liable to the transferee. Id. §§ 766, 767.

All that it is necessary here to decide is that we do not agree with the cases holding the first of the above propositions. We are of the opinion that the transfer of the note may in such a case be a valid sale, and whether, as a question of law, the obligation of the indorser is usurious, it is not necessary here to decide. Now, in the case at bar there are a series of such transactions. The business, and the whole course of business, between the plaintiff and the bank, consisted of the indorsement and delivery of such notes, and receiving the proceeds of the same. All of the general arrangements between the parties were made for the purpose of facilitating this business. There are many facts and circumstances from which the trial court might have found the transactions to be merely a loan, or series of loans, but the court has not so found, and we are of the opinion that the finding is not contrary to the evidence; in other words, that it is a question of fact, from all the evidence,—not merely a question of law,—whether or not these transactions were

sales of the notes, or a series of loans, in which the notes were delivered as collateral security.

Appellant relies mainly on the case of Farmers & M. Bank v. Baldwin, 23 Minn. 198, in his contention that such discounting of a note is, in law, a loan. The question here involved was not directly involved in that case. It is only necessary to say that, on the question there directly involved, the case was followed in First Nat. Bank v. Pierson, 24 Minn. 140, and the same rule applied to national banks, and that the last case was directly overruled in Merchants Nat. Bank v. Hanson, 33 Minn. 40, 21 N. W. 849, so that the authority of Farmers & M. Bank v. Baldwin is somewhat shaken. Appellant also cites Freeman v. Brittin, 17 N. J. Law, 191, which was directly overruled in Durant v. Banta, 27 N. J. Law, 624. Under the circumstances, we are of the opinion that the question whether such a discount of a note is necessarily a loan should not be considered as settled by Farmers & M. Bank v. Baldwin.

This disposes of the case, and the order appealed from is affirmed.