FRED H. STOLZE v. BANK OF MINNESOTA.[1]

January 14, 1897.

Nos. 10,193—(201).

**Bank—Discount of Note—Effect.**

*Held,* following Becker's Inv. Ag. v. Rea, 63 Minn. 459, that whether the discounting of a bill or note with the general indorsement of the holder is a sale of the paper, or a loan to the holder, secured by the paper and indorsement as collateral, is ordinarily a question of fact.

**General Deposit—Equitable Set-Off.**

The plaintiff's assignor indorsed and delivered certain notes of its customers to the defendant, and was credited on the books of the defendant with the amount thereof as a general deposit. The assignor thereafter made an assignment for the benefit of its creditors to the plaintiff, who brought this action to recover the balance of the deposit. The trial court found as a fact that the transaction was a loan, secured by the indorsed notes, and as a conclusion of law that the defendant had the right to an equitable set-off of the loan against the deposit, although the loan was not due when the assignment was made. *Held,* that the evidence sustains the findings of fact, and that the conclusion of law is right.

Appeal by plaintiff from a judgment of the district court for Ramsey county, in favor of defendant, entered in pursuance of the findings and order of Kelly, J. Affirmed.

*Samuel Morrison* and *P. J. McLaughlin,* for appellant.

*Stevens, O'Brien, Cole & Albrecht,* for respondent.

[1] Reported in 69 N. W. 813.

START, C. J. This is an action by Fred H. Stolze, as assignee of the Elmer H. Dearth Agency, an insolvent corporation, to recover from the defendant $2,838.83, the balance of a general deposit with the defendant to the credit of the insolvent at the date of its assignment to the plaintiff for the benefit of its creditors. The answer admits the amount of the deposit, and alleges as an offset that the defendant loaned and advanced to the insolvent, at its request, before its assignment, various sums of money, amounting, in the aggregate, to $9,869.17, and took as security therefor certain negotiable promissory notes, set out in the answer, payable to and indorsed by the insolvent. The reply denied that the defendant loaned any money to the insolvent, and alleged that the notes referred to in the answer were sold and indorsed to the defendant, and that none of them were due at the time the insolvent made its assignment. Upon this issue the trial court made this finding:

"The defendant at various times granted loans of money and accommodations to the said Elmer H. Dearth Agency, and at its request, and accepted its indorsements upon negotiable paper of others as security for said loans. Among other transactions, the said defendant advanced, loaned, and paid out to the Elmer H. Dearth Agency, aforesaid, and at its request, and before its said assignment, various sums of money, amounting in the aggregate to $9,869.17, and took as security for said loans the indorsement of the said Elmer H. Dearth Agency upon certain notes, mentioned in defendant's answer, all of which are now overdue and none of which have been paid, except a note of D. Kennedy & Son for the sum of $143.44, and except that there has been paid upon certain notes of Hobb's Medicine Company the sum of $5,000, and there still remains unpaid upon said loans far more than the amount of said deposit. The makers of all said notes were insolvent at the time of the making of the assignment of the Elmer H. Dearth Agency, and still remain insolvent. Due demand of payment and notice of nonpayment and protest for nonpayment of said notes was made at their maturity."

It was admitted, as a fact, on the trial, that none of the notes referred to in the answer and findings were due when the assignment was made. As a conclusion of law, the court directed that the plaintiff take nothing by this action, and that defendant have judgment for its costs. The plaintiff appealed from the judgment so entered.

The only question on this appeal is the sufficiency of the evidence to support the foregoing finding of fact.

If, as claimed by the plaintiff, the only liability of the insolvent, the Dearth Agency, to the bank was that of indorser on the notes referred to, then his contention to the effect that such liability was contingent, because, when the assignment was made, the notes were not then due, and therefore such liability cannot be offset in this action, is correct. Wilder v. Peabody, 37 Minn. 248, 33 N. W. 852. The plaintiff's claim rests upon the proposition that the indorsement of the notes to the defendant was an absolute sale of them, and that the bank did not loan to the insolvent any money. On the other hand, the claim of the defendant is that the insolvent's liability was twofold: (1) That it was primarily and absolutely liable to the bank for the amounts represented by the several notes, because such amounts were loaned to the insolvent on the notes so indorsed as security; (2) that it is contingently liable as such indorser; (3) that it is the absolute debt or liability, and not the contingent one, which the bank seeks to offset in this case.

If the defendant's claim is correct, it follows that the conclusion of law by the trial court is also correct; for, if the claim of the bank was absolute, although not due, it had the right to an equitable set-off in its favor against the deposit, upon the insolvency of the Dearth Agency. St. Paul & M. T. Co. v. Leck, 57 Minn. 87, 58 N. W. 826. The pivotal question in the case, then, is, did the defendant loan the amount of the several notes to the insolvent on the security of its general indorsement of the notes? It is admitted that the defendant did not take any note or obligation from the insolvent as evidence of the alleged loan, and that, when the insolvent brought in the notes, with its indorsement thereon, and delivered them to the defendant, the amount thereof was placed to its credit, and was subject to its check. Whether or not the discounting of a bill or note, with the general indorsement of the holder, is a sale of the paper, or a loan to the holder, secured by the paper and indorsement as collateral, is ordinarily a question of fact. Becker's Inv. Ag. v. Rea, 63 Minn. 459, 65 N. W. 928.

The evidence sustains the finding of the court we have quoted, to the effect that the defendant loaned the amount of the notes

to the insolvent, and took the notes as collateral. There were two principal witnesses on this question,—Mr. William Dawson, Jr., the cashier of the defendant, and Mr. Elmer H. Dearth, the president of the insolvent. The testimony of the former was substantially this:

A day or two before October 1, 1895, Mr. Dearth came into the bank, and said that he had a good concern that was entitled to credit, and wanted to do business with a bank that would do it on the basis of their own credit; that they would keep a good balance, and would at times want to borrow as high as $20,000. I told him to bring in a statement, and if it was all right we would take the account and make the loan. He brought in the statement, showing the company to be solvent. The next day he came in, and I took some notes from him, and I loaned him $2,913.29. After this I did not see very much of him. The business went right along. He said he would not ask to borrow on his or his company's name, but always on his customer's paper. These notes were brought in, and we would loan him the money, and place it to his credit just as fast as he brought them in, up to twelve or thirteen thousand dollars. Some of them were taken care of when due by the makers, and others by the Dearth Agency.

On his cross-examination he testified as follows:

"Q. Is it your usual custom, Mr. Dawson, when you make a loan, or make a loan to a customer or anybody else, to make the loan without taking from the borrower his note? A. Why, we have got a lot of customers, just like Mr. Dearth, that we take the paper, and charge it to them. Q. But I ask you, when you say that is the custom, what is the usual custom, in relation to taking the note of the debtor? Don't you require the debtor to make his note when you make a loan of money to him? A. Why, if we loan it to him on his own name, we take his note. If we loan it on stocks or bonds or collateral, we take his note, and state what the collateral is. If we loan him on his customer's note, we take the note, and don't take his with it. Q. Now, if he came in to discount a note, without asking you to discount a loan at all, you would do precisely the same thing, wouldn't you? A. I don't think they very often say, 'Will you discount a note?' They say, 'Will you loan us some money on this note?' That is the way they usually come in. Q. Now, Mr. Dawson, do you mean to say that, where a party should come in with notes that he wanted discounted, and he said he wanted you to make a loan, that you wouldn't also take his note? A. I mean to say, if we were going to loan him any money, we would simply have him write his name on the notes, and place them to his credit. * * * Q. Do you mean to testify, Mr. Dawson, that you held those notes, and all the notes that you had at that time, as collateral to loans or advances that you had made from time to time to the Dearth Agency? A. I mean they were collaterals to the indorsement of Mr. Dearth's company to our bank. Q. As what? A.

They were the only security we had for the advances made by our bank to Mr. Dearth on those notes."

The cashier gave much other testimony, but none which materially affects that which we have here set out. The president of the insolvent testified that he told the cashier that his company wanted a line of credit in discounting the paper of its customers, and that it might run as high as $15,000 or $20,000.

"Q. Was anything said about borrowing or loaning money? A. No; only in that connection. Q. Did you ever ask a loan from the bank? A. No. Q. Did they ever loan you any money? A. No; only in that connection as I stated. Q. Do you know how the business was transacted in relation to the discounting of the paper between you and the bank? A. Yes. Q. What was the method? A. Why, we took our customers' paper, notes bearing interest, there for deposit to our credit, discounted. Q. You took the notes to the bank? The note was indorsed by you,—by the Dearth Agency? A. By the Agency. Q. Delivered to the bank, and your account was credited? A. Yes, sir."

It is obvious that the evidence amply sustains the finding. Such being the case, all other questions urged by the appellant are immaterial.

Judgment affirmed.