Points Decided.

(March 3, 1910.)

M. P. MEHOLIN, Receiver, Respondent, v. ANDREW E. CARLSON, Appellant.

[107 Pac. 755.]

BANK STOCK—PURCHASE OF—PAYMENT BY NOTE—DEFENSES—AGREE-
MENT LIMITING LIABILITY OF STOCKHOLDER—FRAUD ON STOCK-
HOLDERS AND CREDITORS—AGREEMENT ENFORCED—SECRET AGREE-
MENT VOID—FRAUDULENT REPRESENTATIONS—DILIGENCE—EQUITY
OF CREDITORS—LACHES—EVIDENCE—SUFFICIENCY OF—PROHIBITED
CONTRACTS—ULTRA VIRES—MUST BE PLEADED—ISSUE OF STOCK—
VALUABLE CONSIDERATION—PROMISSORY NOTE—ASSET.

1. Where an agreement was entered into by the bank and C. on the 16th of December, 1905, whereby the bank agreed to sell and issue to C. a certificate for ten shares of a new issue of its capital stock for $140 per share, and C. agreed to execute and deliver to the bank his promissory note for $1,400, that being the purchase price for said stock, and it was understood and agreed that said promissory note should be paid out of dividends arising on said stock, and that C. would not be called upon otherwise to pay said promissory note, and that he should be held out to the general public as a stockholder of said bank, *held*, that that part of the contract as to the manner of payment for said stock is void, and that an action may be sustained on said note to enforce the collection of the purchase price of said stock.

2. A suit to recover the purchase price of corporate stock may be maintained by the receiver of a bank, and any secret agreement between the bank and a purchaser of stock limiting the purchaser's liability on his unpaid subscriptions is void as against corporate creditors.

3. A corporation has no authority to accept subscriptions to its capital stock upon special terms where the terms are such as to constitute a fraud upon other subscribers or upon persons who become creditors of the corporation.

4. Such fraudulent or unauthorized stipulations are void, and the subscriber is liable, and the subscription may be enforced by the receiver of the corporation for the benefit of the creditors.

5. Where false and fraudulent representations are alleged as a defense, the purchaser must use the utmost diligence to discover the fraud and repudiate the contract, and unless he does so, he cannot avoid payment of the purchase price.

6. In case of corporate insolvency, the equities of the creditors supersede those of the stockholder, even when his subscription has

been induced by fraud; and when the subscriber has waited until suit has been brought by a receiver, then it is too late for him to plead fraud and misrepresentations.

7. Where a stockholder has for a considerable period of time prior to the failure of a corporation occupied the position of one of its stockholders, and exercised and enjoyed the rights, privileges and fruits of that relation, and received dividends on his stock, after the failure of the corporation it is too late to rescind his contract for the purchase of the stock on the ground of false representations.

8. *Held,* that the affirmative defenses set up by the answer were not legal or valid defenses, and were properly stricken out by the court.

9. *Held,* the evidence shows that the stock certificate was pledged or held as collateral for the payment of the promissory note given for the purchase price thereof.

10. Under the provisions of sec. 2976, Rev. Codes, a bank is prohibited from accepting as collateral its own capital stock, except in cases where the taking of such collateral shall be necessary to prevent loss upon a debt previously contracted in good faith. That section prohibits certain acts by the bank, but fails to impose any penalty or forfeiture for its violation, and the creditors of the bank should not be punished and the purchaser of stock rewarded by permitting him to avoid the contract, for the reason that it is prohibited by the statute.

11. When a corporation enters into a contract not authorized by its corporate grant or the statute, the doctrine of *ultra vires* cannot be raised by the person with whom it has dealt, as a means of avoiding his obligation, after the corporation has become insolvent.

12. The doctrine of *ultra vires* should not be applied when it would defeat the ends of justice or work a legal wrong.

13. The defense of *ultra vires* is never sustained out of regard for a defendant, but only where an imperative rule of public policy requires it.

14. The question of *ultra vires* must be plead, and cannot for the first time be raised in the appellate court.

15. Under the provisions of sec. 9, art. 2, of the Constitution of Idaho, no corporation is permitted to issue stocks or bonds except for labor done, services performed or money or property actually received. *Held,* that the promissory note received in payment for corporate stock is personal property, was a thing in action or evidence of debt, and was a valid consideration given for the stock purchased by the appellant, and was an asset of the bank that might be collected for the purpose of discharging its debts.

(Syllabus by the court.)

APPEAL from the District Court of the Third Judicial District for Ada County. Hon. Fremont Wood, Judge.

Action by the receiver of the Capital State Bank to foreclose a pledge and to recover on the promissory note of the appellant given as the purchase price for ten shares of the capital stock of said bank. Judgment for the receiver. *Affirmed.*

Johnson & Johnson, and L. F. Clinton, for Appellant.

The ground upon which the motion to strike was made (Trans., fol. 58), that defendant sought to vary the terms of the note by parol, is not tenable, and the distinction is clearly pointed out in *Burke v. Dulaney,* 153 U. S. 228, 14 Sup. Ct. 816, 38 L. ed. 698. The same rule was applied in *Brick v. Brick,* 98 U. S. 514, 25 L. ed. 256, citing *Peugh v. Davis,* 96 U. S. 336, 24 L. ed. 775.

The highest state courts have universally followed the same rule. (*Higgins v. Ridgway,* 153 N. Y. 130, 47 N. E. 32; *Lime Rock v. Hewett,* 50 Me. 267; *Benton v. Martin,* 52 N. Y. 570; *Julliard v. Chaffee,* 92 N. Y. 529; *Beach v. Nevins,* 162 Fed. 129; *Barghoorn v. Moore,* 6 Ida. 531, 535, 57 Pac. 265.)

By the overwhelming weight of authority, the defense interposed by Carlson to the note would be good against the bank. These defenses, we contend, are equally available against the receiver of the bank, as, under the statutes of Idaho, such a receiver stands in the shoes of the insolvent corporation. (*Litchfield Bank v. Peck,* 29 Conn. 384; *Republic Life Ins. Co. v. Swigert,* 135 Ill. 150, 25 N. E. 680, 12 L. R. A. 328; *Gottlieb v. Miller,* 154 Ill. 44, 39 N. E. 992; *Young v. Stevenson,* 180 Ill. 608, 72 Am. St. 236, 54 N. E. 563; *Johnston v. May,* 76 Ind. 293; *Shopert v. Indiana Nat. Bank,* 41 Ind. App. 474, 83 N. E. 515; *Ray v. First Nat. Bank,* 111 Ky. 377, 63 S. W. 762, 769; *Nix v. Ellis,* 118 Ga. 345, 98 Am. St. 111, 45 S. E. 405; *Miller v. Savage,* 60 N. J. Eq. 204, 46 Atl. 633; *Bell v. Shibley,* 33 Barb. 610; *Catt v. Olivier,* 98 Va. 580, 36 S. E. 980; *Shuey v. Holmes,* 20 Wash. 13, 54 Pac. 540; *In re Hamilton,* 26 Or. 579, 38 Pac. 1088; *Chase v. Petroleum*

*Bank,* 66 Pa. 169; *McLaren v. First Nat. Bank,* 76 Wis. 259, 45 N. W. 223; *Scott v. Armstrong,* 146 U. S. 499, 13 Sup. Ct. 148, 36 L. ed. 1059; *Fourth St. Bank v. Yardley,* 165 U. S. 634, 17 Sup. Ct. 439, 41 L. ed. 855; *Auten v. City Electric St. Ry. Co.,* 104 Fed. 395; *Central App. Co. v. Buchanan* (C. C. A.), 90 Fed. 454, 33 C. C. A. 598; High on Receivers, 3d ed., sec. 245; Beach on Receivers, sec. 699.)

The uncontradicted evidence in this case is that appellant was never the owner of the stock in question, never had the same in his hands, never exercised any control over it, never misled anyone in regard to the title to same, and neither actually nor constructively made or attempted to make any transfer of the stock certificates. Consequently he could not have delivered the same in pledge to the bank. An actual or constructive delivery is necessary in order to constitute a pledge. (*Commercial Bank v. Flowers,* 116 Ga. 219, 42 S. E. 474; *Heilbrou v. Guarantee Loan & Trust Co.,* 13 Wash. 645, 43 Pac. 932.)

The court erred in denying appellant's motion to dismiss the suit upon the ground that the alleged pledge agreement was in violation of sec. 2976, Idaho Rev. Codes, was *ultra vires,* and therefore could not be the basis of a suit. (*Nicollet Nat. Bank v. City Bank,* 38 Minn. 85, 8 Am. St. 643, 35 N. W. 577; *Maryland Trust Co. v. Bank,* 102 Md. 608, 63 Atl. 70; *Conklin v. Bank,* 45 N. Y. 655; *Buffalo Insurance Co. v. Bank,* 162 N. Y. 170, 56 N. E. 523, 48 L. R. A. 107.)

The act of a bank taking its own stock as collateral security, except for an antecedent debt, is *ultra vires.* There has been no performance on either side, and in view of this there is no conflict in the authorities in holding in such cases that the contract is absolutely void and of no effect, and not merely voidable. (*Northwestern Union Packet Co. v. Shaw,* 37 Wis. 655, 19 Am. Rep. 781; *Tennessee Ice Co. v. Raine,* 107 Tenn. 151, 64 S. W. 29; *Norton v. Deery Nat. Bank,* 61 N. H. 592, 60 Am. Rep. 334; *Davis v. Old Colony Ry. Co.,* 131 Mass. 258, 41 Am. Rep. 221; *Brunswick Gas Light Co. v. United Gas etc. Co.,* 85 Me. 532, 35 Am. St. 385, 27 Atl. 525; *National Home Building Assn. v. Home Sav. Bank,* 181 Ill. 35, 72 Am.

St. 245, 54 N. E. 619, 64 L. R. A. 399; *Converse v. Norwich etc. Trans. Co.,* 33 Conn. 166; *Simmons v. Troy Iron Works,* 92 Ala. 427, 9 So. 160; *Ward v. Joslin,* 186 U. S. 142, 22 Sup. Ct. 807, 46 L. ed. 1093.)

A subscriber to void stock does not thereby become a stockholder and cases holding that subscribers are liable to creditors for their unpaid subscriptions are not applicable. Such stockholders possess no rights, and are not subject to any liabilities upon the stock so issued. (*Scoville v. Thayer,* 105 U. S. 143, 26 L. ed. 968; *Christensen v. Eno,* 106 N. Y. 97, 60 Am. Rep. 429, 12 N. E. 648; *Arkansas River etc. Co. v. Farmers' Loan Co.,* 13 Colo. 587, 22 Pac. 954; *Kellerman v. Maier,* 116 Cal. 416, 48 Pac. 377.)

Wyman & Wyman, for Respondent.

"Any secret agreement limiting the liability of a stockholder on his unpaid subscription is void as against creditors." (Cook on Corp., sec. 210; Jones, Insolvent and Failing Corp., sec. 399; Clark and Marshall, Private Corp., p. 1452; 10 Cyc. 433; 26 Am. & Eng. Ency. of Law, 914; Purdy's Beach on Private Corp., secs. 252, 253; *Foy v. Blackstone,* 31 Ill. 538, 83 Am. Dec. 246; *Burke v. Smith,* 16 Wall. 390, 21 L. ed. 361; *Upton v. Tribilcock,* 91 U. S. 45, 23 L. ed. 203; *York Park Bldg. Assn. v. Barnes,* 39 Neb. 834, 58 N. W. 440; *Dowie v. White,* 12 Wis. 176, 78 Am. Dec. 731; *Tuckerman v. Brown,* 33 N. Y. 297, 88 Am. Dec. 386; *Yonkers Gazette Co. v. Jones,* 51 N. Y. Sup. 973; *Blodgett v. Morrill,* 20 Vt. 509.)

After insolvency of a corporation the equities of the creditors become superior to those of a subscriber of stock who was induced to purchase because of false and fraudulent representations; the creditor relies, and has a legal right to rely, upon the faith and credit of the stockholders. (*Oakes v. Turquand,* L. R. 2 H. L. 325; Morawetz on Corp., sec. 108; Jones, Insolvent and Failing Corp., sec. 399; Purdy's Beach on Private Corp., sec. 628.)

Defendant did not seek to repudiate his contract until the filing of his answer herein; nor did he ever complain of it

until called upon to pay his note, very shortly before the filing of the complaint. (*Ross-Mechan B. S. F. Co. v. Southern Malleable I. Co.*, 72 Fed. 957; *Newton National Bank v. Newbegin*, 74 Fed. 135, 20 C. C. A. 339, 33 L. R. A. 727; *Wallace v. Hood*, 89 Fed. 11; *Scott v. Abbott*, 160 Fed. 573, 87 C. C. A. 475; *Chubb v. Upton*, 95 U. S. 665, 24 L. ed. 523; *Martin v. South Salem L. Co.*, 94 Va. 28, 26 S. E. 591.)

Where proof is offered of false representations as inducing a purchase of stock it should be rejected, as such a defense is not available as against its creditors in an action by them. (*Ruggles v. Brock*, 6 Hun, 164; *Marion Trust Co. v. Blish* (Ind. App.), 79 N. E. 415; *Cox v. Dickie*, 48 Wash. 264, 93 Pac. 523.)

"A parol agreement made at the time of subscribing for stock and inconsistent with the written terms of a subscription is immaterial, incompetent and void." (*Topeka M. Co. v. Hale*, 39 Kan. 23, 17 Pac. 601; *Jackson F. & M. Ins. Co. v. Walle*, 105 La. 89, 29 So. 503; *Armstrong v. Danahy*, 27 N. Y. Supp. 60, 75 Hun, 405; *Wilson v. Hundley*, 96 Va. 96, 70 Am. St. 837, 30 S. E. 492; *La Grange & M. P. R. Co. v. Mays*, 29 Mo. 64; *Conn. etc. R. Co. v. Bailey*, 24 Vt. 465, 58 Am. Dec. 181; *Miller v. Hanover J. & S. R. Co.*, 87 Pa. 95, 30 Am. Rep. 349; 10 Cyc. 414; 26 Am. & Eng. Ency. of Law, 911; Clark & Marshall, Corp., pp. 1456, 1457; Thompson, Corp., sec. 1400; *Marshall Foundry Co. v. Killian*, 99 N. C. 501, 6 Am. St. 539, 6 S. E. 680; *Wilson v. Deen*, 74 N. Y. 531.)

Performance by either party takes the case out of the rule as to *ultra vires* being a defense. (29 Am. & Eng. Ency. of Law, 56, 57, and cases there cited.)

But *ultra vires* is not available as a defense here. It would be an outrage to permit appellant to enter into the contract he did with the bank—to have the stock issued in his name, himself held out to the public as a stockholder ·for the purpose of securing new depositors, and then to escape all liability on his note and as a stockholder on the ground the corporation could not receive the stock as collateral security to his note. (*Burke etc. Co. v. Wells-Fargo & Co.*, 7 Ida. 42, 60 Pac. 87; *Ohio & Miss. Ry. Co. v. McCarty*, 96 U. S. 258,

24 L. ed. 693; *Carson City Sav. Bank v. Elevator Co.*, 90 Mich. 550, 30 Am. St. 454, 51 N. W. 641; *First Nat. Bank v. Trust Co.*, 187 Mo. 494, 86 S. W. 109, 70 L. R. A. 79; *Bear River V. O. Co. v. Hanley*, 15 Utah, 506, 50 Pac. 611; *Whitney Arms Co. v. Barlow*, 63 N. Y. 62, 20 Am. Rep. 504; *Lewis v. Amer. S. & L. Co.*, 98 Wis. 203, 73 N. W. 793, 39 L. R. A. 559.)

But the question of *ultra vires,* so far as this case is concerned, is raised in the supreme court for the first time. It was not mentioned in the argument or in the briefs in the court below. Not one of the cases now cited was called to that court's attention. Not only was the matter not presented, but it is not pleaded and therefore cannot now be raised. (5 Ency. of Pl. & Pr. 95; 10 Cyc. 1156; *Commercial Bank v. King*, 47 Ia. 64; *Citzens' State Bank v. Pence*, 59 Neb. 579, 81 N. W. 623; *Building & Loan Assn. v. Berlau*, 125 Ia. 22, 98 N. W. 766; *Mason v. Standard D. & D. Co.*, 83 N. Y. Supp. 343, 85 App. Div. 520; *Chicago P. T. Co. v. Munsell*, 107 Ill. App. 344; *Lake Street E. R. Co. v. Carmichael*, 184 Ill. 348 (351), 56 N. E. 372; *Life Assn. v. Cook*, 20 Kan. 19.)

SULLIVAN, C. J.—This action was brought by the plaintiff as receiver, to foreclose an alleged pledge agreement and for other purposes. It is alleged, among other things, in the complaint, that the defendant and appellant, Carlson, on December 10, 1907, executed and delivered to the Capital State Bank his promissory note for $1,400, to secure the payment of which he pledged to the bank ten shares of its capital stock represented by certificate No. 183; that said note and the stock certificate came into respondent's hands, as receiver of said bank; that said promissory note has not been paid, and prays for a decree of foreclosure and sale of said stock certificate and for attorney's fees and for a deficiency judgment against the defendant.

The answer admits the formal allegations as to the corporate existence of said bank and the appointment of the receiver, also the execution of said promissory note, but denies

its delivery as well as the ownership and pledging of the bank stock, and as an affirmative defense certain matters are set out relating to the manner in which the stock was issued to him, claiming that by a contemporaneous oral agreement he was not to be liable upon said promissory note; that the dividends of the stock were to pay the note, and that he was induced to enter into the transaction by reason of false and fraudulent representations.

On motion of plaintiff, all of the affirmative defenses were stricken from the answer. The action was thereafter tried before the court and the receiver was the only witness who testified on the part of the plaintiff. He testified, in substance, that he received the note and stock certificate when he took charge of the affairs of the bank as receiver; that there were no indorsements on the certificate and the blank assignment of the stock was not filled out; that he found no written pledge agreement, and the only evidence of any kind by which it was attempted to show a pledge agreement was an alleged admission which the receiver testified the defendant made to him about two or three months after he took charge of the bank as receiver; that at the time of said conversation with the defendant, the latter explained to him the condition under which the stock was issued and the note given. The court permitted him to testify, over the objections of the defendant, what was said by the defendant, and he testified that the defendant stated he was solicited to take the stock, and that the bank officials promised him the dividends from such stock would pay for it or pay said promissory note. The defendant testified in his own behalf that he had not delivered the note to the bank or to any of its officials, that the certificate of stock had never been delivered to him, that he never had it in his hands, and that he is not now and never has been the owner of said stock.

Judgment was entered in favor of the plaintiff. The appeal is from the judgment.

The first error assigned is the striking out of the affirmative defense of the answer and excluding the evidence offered in support thereof. In support of that assignment counsel con-

tend that the receiver took the assets of said bank as he found them, subject to all defenses and equities that might exist against them. This rule, as a rule of law, is conceded to be correct by counsel for respondent, but it is contended that it has no application to the facts of this case.

It appears that the original transaction, out of which said promissory note arose, was entered into two years prior to the execution of said note, and was a subscription to a new issue of bank stock and the purchase of that stock by the defendant, with an alleged secret agreement between the defendant. and the bank that he should never have to pay the note and that the dividends of the stock would pay it. The seventh, eighth, ninth, tenth and eleventh paragraphs of said answer are as follows:

"7. And further answering said complaint defendant avers that on or about the 16th day of December, 1905, he was solicited by said bank to purchase some of the new issue of the capital stock of said bank, for the reason, as stated by said bank, that it would be a benefit to said bank and tend to increase its business to have defendant's name connected therewith. That defendant declined on the ground that he did not have the means. That the said bank thereupon falsely and fraudulently represented to defendant that the stock of said bank was worth a premium of forty per cent above its par or face value, or the sum of $140 per share and that the dividends therefrom would in a very short time equal the value of said stock, and it then and there represented to defendant that if he would permit the use of his name as being interested in said bank and thereby cause new business to be attracted to said bank, it would cause to be issued in his name ten fully paid-up and nonassessable shares of said stock, and would hold the same until dividends thereon would equal the sum of fourteen hundred dollars, the alleged value of said stock, and that on the happening of that event, the said stock should be delivered to and become the property of defendant.

"8. That the said bank thereupon, and by means of said false and fraudulent representations, and without any consideration whatever, induced defendant to execute a note for

the sum of $1,400, dated on said 16th day of December, 1905, which note, except as to purporting to be due in six months, was in tenor and effect the same as the note set forth in said complaint, but the said bank stated that said bank would never call upon defendant to pay said note and that the note together with the certificate should constitute a memorandum of the transaction without any liability whatever on the part of defendant to pay the same or any part thereof, or to pay for the said certificate of stock, except as the same should be paid for out of the dividends therefrom. That certain dividends declared were applied in accordance with agreement by the bank but defendant cannot say how much.

"9. That no indebtedness of any kind was ever due from defendant to said bank, and the said certificate of stock was never delivered to defendant, and defendant never delivered the said note to said bank, and no consideration whatever passed to defendant for or on account of the execution thereof, and the said plaintiff has never at any time parted with anything of value, for or on account of said transaction.

"10. That the said representations were false and the actual value of the capital stock of said bank at the time said representations were made did not, upon the best information and belief of defendant, exceed twenty-five dollars per share; and the said ten shares of said stock, purporting to be represented by said certificate No. 183 were at no time of any value whatever, for the reason that the said stock which they purported to represent was not issued for labor done, services performed or money or property actually received, and was therefore wholly fictitious and void. And defendant further avers, upon his information and belief, that said bank was at that time and at all times subsequent thereto in a failing condition, and if called upon at that time or any time thereafter to meet its just obligations, would have been unable to do so, and said bank has since become insolvent and has been placed in the hands of receivers, and its capital stock is of no value whatever. And defendant further avers, upon his information and belief, that at the time the said certificate of stock attached to said complaint and marked 'Exhibit A'

was filled out and signed by George D. Ellis, as President, and H. E. Neal, as Cashier, the said Neal was engaged in numerous fraudulent and criminal transactions in connection with the assets and funds of said bank, by reason of which the actual value of the capital stock of said bank was at that time greatly depreciated, and it was at that time of little or no actual value whatever, and that all of these facts were well known to said plaintiff but were entirely unknown to defendant, and the defendant was misled thereby and executed said note, as well as the note mentioned in said complaint, relying wholly upon the representations and promises of plaintiff, as aforesaid.

"11. That no demand was ever made upon the defendant for the payment of said first note, but, on the contrary, the said plaintiff thereafter requested defendant to sign the note set forth in plaintiff's complaint in place of the said prior note, and at the same time repeated said representations and promises set forth in the three preceding allegations hereof, and promised and agreed with defendant that said note was never to be paid. That these promises together with the other representations made by plaintiff, as aforesaid, were the only inducements for the signing of said last-mentioned note by defendant, and the said note was never delivered to plaintiff, but was held by said plaintiff, together with said certificate of stock, in all respects in the same manner and for the same purposes as the previous note signed by defendant, as hereinbefore fully set forth."

Those allegations show that in becoming a subscriber and purchaser of said stock, the bank entered into an agreement with appellant by which the stock itself was to be a gift, that is, it was not to be paid for by appellant, his note to be a nullity, and the bank was to represent to the public that the defendant, who was a prominent business man and a merchant, was a stockholder of the bank; that he had paid for his stock; that the money had gone· into the assets of the bank; that his stockholder liability was available to creditors in the event of a failure of the bank; that its affairs were to have the benefit of his supervision as one financially in-

terested in its stability, and the honesty and integrity of its management. It is contended that these facts show that this agreement was nothing but a delusion and a snare to induce people to do business with the bank, and that new business might be attracted and new depositors obtained by reason of the fact that the respondent was a stockholder in said bank.

The question, then, is directly presented whether said defense is one that the law will recognize—one that can be successfully pleaded against the issues made by the complaint.

In the seventh paragraph of the separate defense above quoted, the appellant avers, "and it [the bank] then and there represented to defendant that if he would permit the use of his name as being interested in said bank and thereby cause new business to be attracted to said bank, it would cause to be issued in his name ten fully paid-up and non-assessable shares of said stock and would hold the same until dividends thereon would equal the sum of $1,400, the alleged value of said stock, and that, on the happening of that event, the said stock should be delivered to and become the property of the defendant."

In the eighth paragraph it is averred: "And without any consideration whatever, induced defendant to execute a note for the sum of $1,400, dated on said 16th day of December, 1905, which note, except as to purporting to be due in six months, was in tenor and effect the same as the note set forth in said complaint, but the said bank stated that said bank would never call upon defendant to pay said note and that the note, together with the certificate, should constitute a memorandum of the transaction without any liability whatever on the part of defendant to pay the same or any part thereof, or to pay for the said certificate of stock, except as the same should be paid for out of the dividends therefrom."

Those averments must be taken as the agreement and understanding between the bank and the appellant at the time said stock purchase agreement was entered into in the decision of said motion. Counsel for defendant contend that he was in-

duced to subscribe for said stock by false and fraudulent representations. Whether such a defense is available or not has been discussed by Thompson in his Commentaries on the Law of Corporations, 2d vol., sec. 1361 et seq., and he arrives at the conclusion that where the corporation has ceased to be a going concern, and the proceeding against the stockholder is by one who represents creditors, and who consequently stands in a higher right than that of a mere representative of the corporation, such a defense is unavailing to the stockholder; and it has been so held where the proceeding was by an assignee in bankruptcy or by a receiver or by a trustee representing creditors. (See 3 Thompson on Corporations, sec. 3707.) To hold otherwise would open the door to the perpetration of frauds of the worst kind upon both stockholders and creditors.

The rule is well established that a secret agreement by which a purchaser of stock from a corporation is to get an advantage over other stockholders, such as that he shall not pay the purchase price for his stock, is void, and constitutes no defense to an action brought to recover the purchase price by a receiver of an insolvent corporation; and that where false and fraudulent representations are alleged as inducing the purchase of said stock, the purchaser must use the utmost diligence to discover the fraud and repudiate the contract; and that unless he does so, he cannot avoid payment, and where the corporation, whose stock has been purchased under such representations, has become insolvent or has been thrown into the hands of a receiver, no such defense is available. The defendant averred in his affirmative defense that when urged to subscribe for said stock, he entered into an agreement under which said stock was issued to him in his name, and that he gave said note to the bank for the purchase price of said stock with the understanding that he should incur no liability upon the note nor for the stock, but that the dividends should pay the note and that the stock should thereupon become his own. We think the rule is well established that under that state of facts the law avoids the secret understanding but enforces the contract of purchase.

In sec. 210 of Cook on Corporations, the rule is stated as follows: "Any secret agreement limiting the liability of a stockholder on his unpaid subscription is void as against corporate creditors." (Jones on Insolvent and Failing Corporations, sec. 399.)

In Clark & Marshall on Private Corporations, p. 1452, the author states: "A corporation has no authority to accept subscriptions upon special terms, where the terms are such as to constitute a fraud upon the other subscribers, or upon persons who may become creditors of the corporation in reliance upon a *bona fide* and regular subscription of the authorized capital stock. In such a case, however, the subscription is not void. The fraudulent and unauthorized stipulations are void, and the subscriber is liable on his subscription as if no such stipulations had been inserted. It has been held, therefore, in many cases, that any secret agreement between a subscriber for stock in a corporation and the corporation or its agents or promoters, by which he is allowed to subscribe upon different terms than other subscribers, since it is a fraud upon the latter, and any secret agreement by which he is to be released in whole or in part from liability on his subscription, since it is a fraud both upon the other subscribers and upon persons who afterward become creditors of the corporation, is void, and the subscription may be enforced by the corporation, or by or for the benefit of creditors, as if no such agreement had been made."

It is stated in 10 Cyc., p. 433, as follows: "Hence it will be no defense to an action to enforce the subscription that the subscription was colorable merely, not intended to be paid, and that there was a secret agreement that it should not be paid, but that it was intended merely to enable the corporation to get sufficient stock subscribed to enable it to become incorporated under the law, to induce others to subscribe for shares or to give credit to the concern. The rule extends so far as to avoid all secret conditions annexed to the contract of particular subscribers, by which their engagement is rendered more onerous to the corporation, more favorable to

them, or in any respect different from that named in the written contract and in the governing statute, and to hold the subscriber liable to the obligations of a *bona fide* shareholder, and this is illustrated by a variety of decisions cited here and elsewhere." (26 Am. & Eng. Ency. of Law, p. 914.)

In secs. 252 and 253, Purdy's Beach on Private Corporations, the author states the rule to be that though such secret agreements are void, the contract itself stands and may be enforced.

We do not think that there is any considerable authority holding otherwise upon the question under consideration.

In *Blodgett v. Morrill*, 20 Vt. 509, the court said: "Here the alleged fraud consisted in the agreement not to enforce the subscription. This portion of the contract was in bad faith, it is said. Perhaps it is so. But if so, the defendant is equally in fault with the agent; the rest of the association knew nothing of any' such secret agreement. The defendant knew the subsequent signers were to be decoyed by his name. Clearly, then, he ought to be held to his contract."

Counsel for appellant, however, urges that he was induced to enter into the contract for the purchase of said stock by false and fraudulent representations as to the financial standing of the bank and that the dividends on such stock would "in a very short time equal or pay the note." Appellant also alleges that it was represented to him that said shares of stock were worth $140 each at the time of the purchase in 1905, and that such stock was not worth, in fact, more than $25 per share, and that said bank has since become insolvent and the stock of no value whatever. The appellant further alleges in his answer that dividends were declared upon the stock in question and were applied in partial payment of. said note, but it is not alleged just how much said dividends amounted to, and it is averred in the answer that under the contract for the purchase of said stock, it was represented that said dividends would be sufficient in "a very short time" to pay said note. However, it does appear from the record

that the first note was given in December, 1905, and that there were renewals and that the note sued upon was given in December, 1907, and the bank did not fail until January, 1908. There are no indorsements on said promissory note and the note sued on is for $1,400—the amount of the one given in 1905. Where false and fraudulent representations are alleged as inducing the purchase of corporate stock, the purchaser must use the utmost diligence to discover the fraud and repudiate the contract, and unless he does so it is a well-established rule that he cannot avoid the payment.

Morawetz on Corporations, sec. 108, says: "If a person has been induced by fraudulent representations to become a member of a corporation, he must proceed with the utmost diligence if he desires to annul his contract."

And at sec. 839: "It has accordingly been settled, that, if a corporation is insolvent, a stockholder whose contract of subscription was obtained by the fraud of the company's agents, cannot diminish the security of *bona fide* creditors, by rescinding his contract to contribute the amount of capital subscribed by him."

To the same effect is Jones on Insolvent and Failing Corporations, sec. 399.

Purdy's Beach on Private Corporations, at sec. 628, lays down the following rule: "In case of corporate insolvency, the equities of the creditors supersede those of the subscriber, even when his subscription has been induced by fraud. While ordinarily the law does not readily presume acquiescence or waiver in the case of subscriptions procured through fraud, nor hasten to impute laches to subscribers so deceived by the corporate agents; yet when the corporation has become insolvent, a contract of subscription procured through fraud, cannot be rescinded to the prejudice of the rights of creditors. . . . . And when the subscriber has waited until suit has been brought by a receiver, it is then too late for him to plead fraudulent misrepresentations, although the fraud was not discovered until after insolvency."

In the case at bar, the contract for the purchase of stock was made on December 16, 1905, and this action was brought

on December 31, 1908, more than three years after said contract was entered into, and no effort was made, so far as the record shows, to rescind the contract during that time. This certainly does not show diligence on the part of the appellant in rescinding said fraudulent contract.

As bearing upon the question, see *Ross-Meehan Co. v. Southern M. I. Co.,* 72 Fed. 957; *Newton Nat. Bank v. Newbegin,* 74 Fed. 135, 20 C. C. A. 339, 33 L. R. A. 727; *Wallace v. Hood,* 89 Fed. 11; *Scott v. Abbott,* 160 Fed. 573, 87 C. C. A. 475. In the last-cited case, the court said: "When one has for a considerable period of time prior to the failure of a corporation occupied the position of one of its stockholders, and exercised and enjoyed the rights, privileges and fruits of that relation, including the chance of enhanced value of his holdings, when fortune frowns and the chances turn against him, it is too late to assert, as against creditors of the corporation, the right to rescind his contract of stock subscription on the ground of false representations after a state of insolvency has supervened, and after proceedings to wind up the corporation for the benefit of creditors have been or are about to be instituted." (*Chubb v. Upton,* 95 U. S. 665, 24 L. ed. 523; *Martin v. So. Salem L. Co.,* 94 Va. 28, 26 S. E. 591; *Moosbrugger v. Walsh et al.,* 35 N. Y. Supp. 550, 89 Hun, 564; *Olson v. State Bank,* 67 Minn. 267, 69 N. W. 904.)

In Jones on Insolvent and Failing Corporations, at sec. 399, in treating of the effect of fraud on a contract of purchase of corporate stock, the author says: "It is valid and binding until the defrauded party elects to treat it as void; and if he fails to repudiate it before the rights of innocent third parties have intervened, their equities to treat it as valid may be superior to his claim to avoid it. So if he has not been vigilant in discovering the fraud and repudiating the contract, it will be no defense as to creditors of the corporation; and that in general, it will be too late for him to set up the fraud after the corporation has become insolvent or bankrupt."

The supreme court of the United States and other federal courts, the supreme courts of Connecticut, New York, Virginia, Illinois, Indiana, Wisconsin, Georgia, Oregon and other states, hold to the rule above quoted from Jones on Insolvent and Failing Corporations. In the case at bar, appellant has fully and carefully pleaded his own participation in the fraud attempted to be perpetrated and set up as a defense. The appellant admits that he was a party to the fraud and stood by it for about three years, and it is now too late for him to plead it as a valid defense since the bank has become insolvent and bankrupt. The creditors and other stockholders have rights in regard to the matter which he cannot defeat by that defense.

The appellant averred in his separate defense as follows: "Said note together with the certificate of stock should constitute a memorandum of the transaction," and it clearly appears from the allegations or averments of the answer and the evidence that the bank was to sell and issue the stock to the appellant, in his name, which it did, and the appellant gave his note to the corporation representing the amount of the purchase price, specifying therein the amount that should be paid, the date it should fall due, and the rate of interest, which note was signed by the appellant. It is clear that the note and stock did in fact constitute a memorandum of the transaction and there appears no fraud or mistake in any of the terms of said memorandum. The appellant contends that there was a contemporaneous oral agreement wholly varying its terms. That agreement, even if it were no fraud on the other purchasers of stock and on the creditors, is clearly inadmissible in evidence under the rule of evidence established by the foregoing citations. The alleged affirmative defense was no defense to the recovery in this action, as the alleged secret contract was of itself a fraud, and the appellant has been guilty of laches in not repudiating it.

It is next contended by counsel for appellant that the evidence is insufficient to justify the findings of the court to the effect that there was a pledge of the stock. Taking all the evidence upon this question contained in the record,

we are satisfied that there was an understanding between the bank and the appellant that the stock should be held by the bank until it was fully paid for. The receiver testified in regard to a conversation had with appellant, as follows: "In substance I told him that I held that [the stock] as collateral. He [Carlson] said Mr. Eagleson had delivered the stock to him; he took it and read it over and then returned it and said, 'John, you take this stock and hold it in the bank as security for my note.' " He also testified that when he took possession of the effects of the bank as receiver, he found this stock among the effects of the bank in the collateral pouch. We think that the court was justified in finding that the stock certificate was left with the bank as collateral.

It is next contended that the court erred in denying appellant's motion to dismiss the action on the ground that the alleged pledge agreement was in violation of sec. 2976 of the Rev. Codes of Idaho, was *ultra vires* and therefore could not be the basis of a suit. That part of said section which applies to this case is as follows:

"But no such bank shall accept, as collateral, or be the purchaser of, its own capital stock, except in cases where the taking of such collateral, or such purchase, shall be necessary to prevent loss upon a debt previously contracted in good faith."

It is conceded that this stock was not collateral to secure the payment of a prior indebtedness to said bank. It is contended that the recognition of this pledge agreement would nullify said provisions of the statute and be a direct encouragement to banks to disregard its mandatory terms. While said section prohibits the bank from accepting its own capital stock as collateral except to prevent a loss upon a debt previously contracted, it does not impose any penalty or forfeiture for its violation. The provision of the national banking act prohibits certain acts by banks or their officers, but provides no penalty for their violation.

In *Thompson v. St. Nicholas National Bank*, 146 U. S. 240, 13 Sup. Ct. 66, 36 L. ed. 956, the court said: "More-

over, it has been repeatedly held by this court that, where the provisions of the National Banking Act prohibit certain acts by banks or their officers, without imposing any penalty or forfeiture applicable to particular transactions, which have been executed, their validity can be questioned only by the United States and not by private parties.'' (*Union National Bank v. Matthews*, 98 U. S. 621, 25 L. ed. 188; *Sioux T. R. & W. Co. v. Trust Co. of N. A.*, 82 Fed. 124, 27 C. C. A. 73.)

In *Camp v. Land*, 122 Cal. 167, 54 Pac. 839, the bank as cross-complainant sought to foreclose a mortgage. The plaintiff pleaded that it was a security forbidden to the bank by law, but the court said that if that be true, "it did not lie with the plaintiff to raise this point." (*Logan Co. Nat. Bank v. Townsend*, 139 U. S. 67, 11 Sup. Ct. 496, 35 L. ed. 107; *National Bank v. Whitney*, 103 U. S. 99, 26 L. ed. 443; *Walden Nat. Bank v. Birch*, 130 N. Y. 221, 29 N. E. 127, 14 L. R. A. 211.)

We think the rule laid down in those cases might with reason be applied to the facts of this case under the provisions of said sec. 2976. If the said insolvent bank had been solvent and a creditor of the stockholder had attached said stock, the bank would have been precluded by the provisions of said section from setting up the pledge agreement, and we think the appellant himself might have replevined that certificate had he desired to do so, in a suit between himself and the bank, during the solvency of the bank. But as the bank has become insolvent and a receiver has been appointed to take charge of its affairs to protect its creditors as well as its stockholders, under the facts of this case the appellant cannot successfully plead the provisions of said section and thereby defeat the foreclosure of said pledge.

Said motion to dismiss was made at the close of the trial and upon the pleadings as they then stood and the evidence introduced. The evidence shows that the contract for the purchase of the stock was completed. The appellant agreed to purchase the stock and the bank to sell and deliver it. The bank complied with its part of the contract by issuing

the stock to appellant upon which he received at least three dividends; at any rate, it appears that three dividends were paid. Renewals were made and it is only fair to suppose that the dividends were applied in payment of the interest on the promissory note; at least, the promissory note given at the end of two years as a renewal, on which this suit was brought, was for the same amount as the first note given. It appears that it was an executed contract and, in payment for the stock issued to the appellant, he gave said promissory note to the bank. That contract, it appears, was entered into on the 16th day of December, 1905, and apparently it was so considered by both parties to it for more than two years, and under all the evidence of this case, we think the appellant is estopped from evading the effect of that contract.

In *Union Nat. Bank v. Matthews,* 98 U. S. 621, 25 L. ed. 188, the court had under consideration a prohibited contract, and said: "We cannot believe that it was meant that stockholders and perhaps depositors and other creditors should be punished and the borrower rewarded by giving success to this defense whenever the offensive fact shall occur." (*Fortier v. New Orleans Nat. Bank,* 112 U. S. 439, 5 Sup. Ct. 234, 28 L. ed. 764; *Union Gold Min. Co. v. Rocky Mountain Nat. Bank,* 96 U. S. 640, 24 L. ed. 648; *Weber v. Spokane Nat. Bank,* 64 Fed. 208, 12 C. C. A. 93; *Central Trust Co. v. Columbus H. V. & T. Ry. Co.,* 87 Fed. 815; *Farmers' Nat. Bank v. Robinson,* 59 Kan. 777, 53 Pac. 762.)

Counsel contend that there has been no performance of the contract on either side, and for that reason it cannot be enforced. We think there was a full performance. The bank sold him ten shares of stock; he gave his note for $1,400 for the purchase price and then repeatedly renewed said note. The bank performed its part by issuing the stock; appellant has performed his original contract by executing said note. (29 Am. & Eng. Ency. of Law, p. 56, and authorities there cited.)

As to the question of *ultra vires,* a party who has had the benefit of an agreement will not be permitted to ques-

tion its validity. It was said in *Security Nat. Bank v. St. Croix Power Co.,* 117 Wis. 211, 94 N. W. 74, as follows: "This court, by a series of decisions, has held that; when a corporation enters into business relations not authorized by its corporate grant of power, the doctrine of *ultra vires* cannot be used by it or by the person with whom it assumes to deal as a means of defeating the obligations assumed." (*Zinc Co. v. First Nat. Bank,* 103 Wis. 125, 74 Am. St. 845, 79 N. W. 229; *United German Bank v. Katz,* 57 Md. 128; *Merchants' Nat. Bank v. Hansen,* 33 Minn. 40, 53 Am. Rep. 5, 21 N. W. 849; *Becker's Inv. Co. v. Rea,* 63 Minn. 459, 65 N. W. 928.)

We are satisfied that the decided weight of authority is in accord with the decisions·above cited. It is a general rule that *ultra vires* will not be permitted to work injustice. It would be unjust to permit the appellant to enter into the contract he did with the bank, to have the stock issued in his name, himself held out to the public as a stockholder for the purpose of securing new depositors and then to escape liability on his note as a stockholder on the ground that the bank could not receive said stock as collateral security to his note.

In *Burke etc. Co. v. Wells-Fargo & Co.,* 7 Ida. 42, 60 Pac. 87, this court held: "The rule is that that doctrine (*ultra vires*) should not be applied when it would defeat the ends of justice or work a legal wrong."

In *Ohio & Miss. Ry. Co. v. McCarthy,* 96 U. S. 258, 24 L. ed. 693, the court said: "The doctrine of *ultra vires,* when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong."

In *Carson City Savings Bank v. Elevator Co.,* 90 Mich. 550, 3 Am. St. 454, 51 N. W. 641, the court held that the plea of *ultra vires* should not, as a general rule, prevail, whether interposed for or against a corporation, when it would not advance justice, but, on the contrary, would accomplish a legal wrong.

In *First Nat. Bank v. Guardian Trust Co.*, 187 Mo. 494, 86 S. W. 109, 70 L. R. A. 79, the court held in effect that the defense of *ultra vires* should not, as a general rule, prevail whether interposed for or against a corporation, when it would not advance justice, but, on the contrary, would accomplish a legal wrong. The defense of *ultra vires* is never sustained out of regard for a defendant, but only where an imperative rule of public policy requires it.

But the question of *ultra vires* was not pleaded in the case at bar and is raised for the first time in the supreme court. The defense of *ultra vires* is special and is not available under general denial, but must be specially pleaded and proven. (10 Cyc., p. 1156; 5th Ency. of Pl. & Pr., p. 95; *Commercial Bank v. King*, 47 Iowa, 64.)

It is next contended under the provisions of sec. 9 of art. 2, of the constitution of Idaho, that the stock is void. Said section is as follows: "No corporation shall issue stocks or bonds except for labor done, services performed, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void." It is therein provided that no stock shall be issued except for labor done, services performed or money or property actually received. The word "property" includes both real and personal property, and "personal property" includes money, goods, chattels, things in action and evidences of debt. (Sec. 16, Rev. Codes.) Said promissory note was actually received by the corporation and was a thing in action or evidence of debt. That note was an asset of the bank and it appears that the bank had the authority to issue the stock; that it was not a fictitious issue of stock but a valid issue. The bank then received said promissory note for said stock, which was "property" as defined by said sec. 16 of our Rev. Codes.

*Farmers' & Mechanics' Bank v. Jenks*, 7 Met. (48 Mass.) 592, was a case where the defendant and others had given their notes for stock in fraud of the banking laws, and that fact was pleaded in defense to the promissory note which they had given after the failure of the bank. In the course of the decision, the court said: "As to fraud, this, in point

of fact, may, and appears to be, well sustained. . . . . For this fraud the bank might have been amenable before the proper tribunal; but it is not competent for the maker of this note to take this objection to a recovery of the amount due thereon, in an action instituted by a receiver appointed by this court, and representing the creditors of the bank. It is assets that may well be collected for the purpose of discharging the debts of the bank, or the expenses of closing its concerns under the orders of the court.''

We find no error in the record, and the judgment is affirmed, with costs in favor of respondent.

STEWART, J., Concurring.—I concur in the conclusion that this judgment should be affirmed. I do not think Carlson is in a position to urge the provisions of sec. 2976, Rev. Codes, as against an action brought by the receiver to foreclose a pledge of stock given to secure an indebtedness due the bank. He cannot claim immunity in an action brought to repair the wrong done in violating the statute. (*Farmers' & Mechanics' Bank v. Jenks,* 7 Met. (48 Mass.) 592; 34 Cyc. 405.)

AILSHIE, J., Concurring.—I concur in the affirmance of the judgment in this case, and agree with all that is said as to the liability of Carlson on the note sued upon. I agree, also, that the receiver is entitled to a judgment foreclosing the lien on this stock. As to whether or not the bank itself. if still solvent and a "going institution," would be allowed to foreclose a lien on its own capital stock taken in violation of sec. 2976, Rev. Codes, I reserve my judgment. I am satisfied, however, that after the bank became insolvent, quit doing business, and went into the hands of a receiver and the receiver commenced an action, as he has done in this case. to foreclose a lien or pledge, that the stockholder who pledged his stock in violation of the provisions of the statute ought in justice to be estopped from pleading that the stock was taken in violation of the law. The receiver not only represents the bank, but he represents its creditors as well. So far as he represents the creditors of the bank, he is repre-

senting people who were not parties to this violation of the statute and who are not chargeable with the misconduct of the bank officers in taking the bank's own stock as collateral. The stockholder should not, therefore, be allowed to plead this defense against the innocent creditors of the bank.