DANIEL WHITNEY, DANIEL COLBURN and WIL-
LIAM D. COLBURN, Plaintiffs in Error,

*vs.*

PETER BRUNETTE, who sued for the use of ELISHA
MORROW, Defendant in Error.

#### ERROR TO MILWAUKEE CIRCUIT COURT.

In an action of trespass, where the plaintiff based his title to the property solely
upon possession acquired by a levy under attachment served by him as sheriff,
and the defendant claimed title through a sale by the U. S. marshal, the judge
was asked to instruct the jury as follows: "If the jury find that the proper-
ty in question was the property of the United States, and sold by the marshal
under the directions of the solicitor of the treasury or by his approval, to the
defendant, then the plaintiff cannot recover." *Held*, that the refusal so to
instruct the jury was erroneous.

Such a proposition implies that the title to the property was in the United States,
and that the marshal had authority to sell.

The failure to deliver property at the time of the sale, and the fact that it is not
followed by an actual and continual change of possession, is not conclusive ev-
idence of fraud as against the creditors of the vendor; it is only so, unless it
shall be made to appear on the part of the person claiming under the sale, that
it was made in good faith and without any intent to hinder and delay the
creditors of the vendor.

This suit was in trespass, *de bonis asportatis*, com-
menced by the defendant in error against the plain-
tiff in error. The declaration contained several
counts, some of which alleged the property to be in
the nominal plaintiff as sheriff, others in him absolute-
ly. The defendants, Butler and Colburn severed
in their pleas, from the defendant, Whitney, and gave
notice of justification under a writ of replevin issuing
out of the District Court of the United States for
the district of Wisconsin, in a certain suit wherein
said Whitney was plaintiff, and the said Peter Bru-
nette was defendant.

JUNE TERM
1854.

Whitney
et al.
vs.
Brunette.

On the trial below, the plaintiff offered in evidence the record of the proceedings in the Circuit Court of Brown county, in a suit of attachment, commenced by Elisha Morrow against James Christie, William Bronquest and another, to show the issuing of the writ of attachment therein, and the seizure of the property in dispute in this cause, by virtue thereof by the plaintiff as sheriff. It appeared by said record that said writ of attachment had no return day, but that the Circuit Court had allowed the same to be amended, by inserting a return day and a command to summon the defendants named therein, and return to be made, and had denied a motion made by the defendants therein, to dismiss the same for such defects. This offer was objected to because, 1st. It was *inter alio.* 2d. Because it was void, and could not sustain any claim of property founded upon it; but the objection was overruled, and the defendants excepted.

The plaintiffs also offered in evidence the docket entries in a suit in the United States District Court, for the district of Wisconsin, in which Daniel Whitney was plaintiff and Peter Brunette was defendant. This evidence showed that in February, 1851, said Whitney commenced a replevin suit in said District Court against Brunette, for the lumber which is the subject matter of this suit, and that the same was replevied from said Brunette, and delivered to the plaintiff, Whitney, on the writ of replevin issued in that suit. The plaintiff also offered in evidence the writ itself; and which record and writ were objected to by the defendants, but admitted by the court, and the defendants excepted.

The plaintiff offered in evidence the replevin bond in that suit, purporting to be executed by the de-

fendant Whitney as principal, and Butler and Col-
burn as sureties, without proof of its execution, which
was, for want of such proof, objected to on the part
of the defendants, but was admitted by the court, and
there was no other evidence to connect said defend-
ants, Butler and Colburn, with said lumber, or that
they ever, directly or indirectly, interfered with it.
It also appeared that said District Court had dismiss-
ed said replevin suit, without judgment being entered
therein, for the reason that the property described in
the writ was in the custody of the State officer, under
legal process.

It also appeared from the testimony on the part of
the plaintiff, that he had taken the property in ques-
tion in the said writ of attachment, and so held it at
the time it was taken from him by the marshal in
said writ of replevin ; and testimony was also intro-
duced and read in evidence as to its value, which,
not being material to the case in this court, is not
given in this abstract, but appears in the bill of par-
ticulars.

Thereupon the plaintiff rested his case, and the de-
fendants, Butler and Colburn, moved for a non-suit
upon the ground, 1st, That there being no other
proof against them than their signing the replevin
bond, they are not liable in this action. 2d. That it
appears by the plaintiff's own testimony, the proper-
ty in question was, at the time of the execution of
said bond, in the possession of the marshal, and not
of the plaintiff. But the court overruled said motion,
holding that the possession of the marshal was wrong-
ful and illegal, and that the defendants, Butler and
Colburn, were jointly liable with Whitney.

The defendants then, to sustain the issue on their

June Term
1854.

Whitney
et al.
vs.
Brunette.

part, introduced and read in evidence, by permission of the court, but under objections from the plaintiff, the following bond :

"Know all men by these presents, that I, James Christie as principal, and Elisha Morrow, of Brown county, and Josiah D. Weston of Milwaukee county, as surety, are held and firmly bound unto the United States of America, in the penal sum of one thousand and six hundred dollars, to the payments of which, well and truly to be made, we jointly and severally bind ourselves, our heirs, executors and administrators, and each and every of them, by these presents, sealed with our seals, dated at Milwaukee, Wisconsin, this 28th day of October, A. D. 1850.

"Whereas the Marshal of the District of Wisconsin, according to law and instructions, has seized from the said James Christie certain property found in possession, and belonging to the United States of America, to wit : eight hundred thousand feet of sawed pine lumber, at the saw mill of Elisha Morrow, and on the Oconto river, in the said district of Wisconsin ; now if the said James Christie shall, upon demand, deliver to the United States marshal, or to any other officer authorized to receive the same, the lumber aforesaid, without any charge or expense to the United States, then this obligation to be void ; otherwise to be and remain in full force, virtue and effect.                "JAMES CHRISTIE,        [Seal.]
                                "ELISHA MORROW,        [Seal.]
                                "JOSIAH D. WESTON,    [Seal.]

"Executed in presence of HENRY MILLER."

The reading of which was objected by the plaintiff without proof of its execution ; but it was admitted by the court as against E. Morrow, who appears to

be the party in interest and in court.   The plaintiff

excepted.

The defendants then called as a witness William Bronquest, who testified that he executed a bill of sale of the lumber, (the property in dispute,) to Daniel Whitney (which was produced;) that it was signed on the day of the date, Dec. 1850; that he bought the lumber at U. S. marshal's sale; that he was a partner in the firm of Christie & Co. at the time the lumber was seized.   It appeared that the lumber was cut on government land, and sawed at a mill then on government land; that it was manufactured by Christie & Co., of which firm Bronquest was a member; that the firm was indebted to Morrow for rent, advances, &c.; that witness bid off the lumber at marshal's sale, (the same having been seized and sold by the marshal,) and had sold it to Whitney.   Other evidence was given in regard to the *bona fides* of the sale from Bronquest to Whitney, but as it does not become material in regard to the points decided, it is omitted.   Evidence was also given as to the condition and situation of the lumber, and as to the fact of change and continuance of possession.

After the evidence was closed, the following instructions were asked of the court, by the counsel for the defendants, which were refused, and exceptions taken:

1st. The writ of attachment offered in evidence in this cause was void, and no rights were acquired under it.

2d. The plaintiff is estopped by the bond from asserting property subsequent to the 28th of October, and its lawful seizure by the marshal

3d. The defendants, Butler and Colburn, are not

liable in this action, unless, previous to the taking under the writ of replevin, they advised or directed it.

4th. The District Court had jurisdiction to issue the writ of replevin, and defendants, Colburn and Butler, are not liable for giving their bond.

5th. The plaintiff cannot maintain this action unless he had actual possession of the property in question at the time of the alleged taking.

6th. The marshal, although the court that issued the replevin had not jurisdiction, would be justified under it, and all persons aiding him in its execution.

7th. If the jury find, that from the time of the sale from Bronquest to Whitney, the former did not exercise any acts of ownership over the property, although in March he acted as Whitney's agent in disposing of it, it was not necessary, in order to a complete delivery, that the parties should go to the property and take actual possession.

8th. This suit being brought for the benefit of Elisha Morrow in the record, cannot be sustained unless there is shown in him a right to an interest in the property in question.

9th. If the jury find for the plaintiff, the rule of damages must be confined to the amount of the interest of the plaintiff in the goods, which cannot exceed the amount claimed in the bill of particulars in the attachment suit of Morrow vs. Christie and others.

10th. If the jury find that the marshal had the possession of the property in question at the time of the execution of the bond and the alleged taking, they must find for the defendants, Butler and Colburn.

11th. If the jury find that Bronquest neither received delivery of the lumber, nor paid any money previous to the levy on the same by the sheriff, he

June Term
1854.

Whitney
et al.
vs.
Brunette.

then had no property in it subject to levy; and in that case, whatever might be the condition of the sale from Bronquest to Whitney, the plaintiff cannot recover in this cause.

12th. If the jury find that the property in question was the property of the United States, and sold by the marshal under the directions of the solicitor of the treasury, or his approval, to Bronquest, and by him to Whitney, the plaintiff cannot recover.

The judge charged the jury as follows:

This action is brought by Brunette, the plaintiff, who claims to have been acting as sheriff of Brown county, and to have levied upon certain lumber in that county, on a writ of attachment issued out of the Circuit Court, and by that levy to have acquired the right to maintain this action.

To make out the plaintiff's case it must be shown in evidence that Brunette had a valid writ of attachment, and that he made a levy under it and seized and took lawful possession of the property in question. It must appear further that after the sheriff, Brunette, got such possession of the property, it was unlawfully taken from him by the defendant in this suit. On these points you will examine the testimony presented in the case, most of it is of an ordinary character, of which you can judge. One item of it, however, is the writ of attachment under which Brunette made the levy. In regard to that I have to say to you that you should regard the evidence as showing a sufficient writ to warrant the levy, and to warrant this action, so far as the writ of attachment itself is concerned.

You will inquire then, *First*, Did Peter Brunette make a levy under the writ of attachment? and if he

JuneTerm
1854.

Whitney
et al.
vs.
Brunette.

did make such levy, did he take the property, and what property, into his possession? The fact of possession is one of which you are to judge, and it depends upon some legal rules. Where property is levied upon which is capable of being conveniently removed and placed in charge of some person, *that* should be done, and the officer will be deemed to abandon his levy if he permits it to be at large. But as to property which cannot be conveniently taken in hand, such as piles of boards or saw logs, it is enough if the officer is present in sight, and within personal control of the property, and there asserts his design to seize and hold it under his writ, and though he may leave it with no particular person placed in charge to watch and keep it, his levy and possession may be deemed good. But without being personally present, with his writ, in sight of and where he might control the property, no legal levy can be made, and no legal possession can be attained under the writ.

You will apply these rules in determining whether Brunette made a levy under his writ of attachment, and took and held possession thereof. If you find he had lawful possession of the property in question under his writ, then you will next inquire whether the defendant or any of them took it unlawfully out of his possession.

Proof has been given here of the commencement of a suit in replevin in the United States Court, wherein one of the defendants, Whitney, was plaintiff, and Brunette, the plaintiff in this suit, was defendant. In that suit a writ was issued, and the property seized or attempted to be seized under it by the United States marshal, and a bond having been given him

in the usual form of replevin bonds, he placed the property in the hands of Whitney, one of the defendants in this suit. In that bond, Whitney, one of the defendants in this suit, was principal, and Colburn and Butler, the other defendants, were sureties. There is some evidence to show that Whitney, before the bond was given, had advised and directed the marshal in reference to the property to be taken, and if so, he would thereby be made liable for the acts of the marshal. I have said there was proof of a suit in the United States Court that a suit in replevin was commenced. But the decision or judgment of that court in respect to that case, compels this court to hold that the whole proceeding in that suit was without jurisdiction, and that every act done therein, however much in form, as a legal act, was nevertheless wholly void. The seizing of the property by the marshal and the taking of it from him, and delivering it to Whitney, were illegal acts, so far as the authority of the United States is concerned. Unless therefore, some other right or authority on the part of Whitney is shown to take the property from Brunette, his taking was tortious.

The defendant's counsel contend that they have shown such right, and in this way. They allege that in October, 1850, and afterwards, the lumber in question was owned by the United States ; that on the 9th day of December, 1850, the United States marshal having lawful authority, made a sale of this property at public vendue, in the village of Green Bay, to Wm. Bronquest, that Whitney afterwards, and on the same day, at Green Bay, made a purchase and took a bill of sale of this property from Bronquest. I regard it as immaterial to the parties here whether

JUNE TERM
1854.

Whitney
et al.
vs.
Brunette.

there was or was not satisfactory proof of property in the United States or of competent authority on the part of Cotton, the United States marshal, to sell. For we may hold that the title and authority to sell are sufficiently proved for the purposes of this trial. In order to give Whitney a title to the property as between himself and Cotton, and as between himself and Bronquest, the evidence is probably sufficient. But though you find all these facts, there is another question as to the title of Whitney as against Brunette. Brunette, as you have seen, claims under a writ of attachment in his hands as sheriff against Bronquest. The sale from Bronquest to Whitney, though good as between themselves, was not binding against the creditors of Bronquest unless there was an actual and continued change of possession. Unless, therefore, you find it proved that Whitney got actual possession of the property under his purchase, before Brunette made his levy, the levy would be good against him if it was in other respects valid. When I speak of Whitney's getting actual possession, I mean that he or some one in his behalf, must have done that in respect to the property which would have made a sheriff's possession good, under a levy as I have stated. He must have had a delivery or tender of the property made to him, he being at the time present where the property was.

*Again.* It is claimed by the plaintiffs that Whitney's purchase was fraudulent, as to creditors of Bronquest, because it was not an absolute sale, but in fact an assignment, made to pay certain debts and sums of money, and when these payments were made, the balance of the proceeds were to go to Bronquest. If you find that such a provision was conditionally made

June Term 1854.

Whitney et al. vs. Brunette.

out of the proceeds of the lumber for the benefit of Bronquest, the sale was not binding against the creditors of Bronquest. Supposing that you will find one or both of these points proved, as the plaintiffs claim. I have said it seemed to me not material whether the United States owned the lumber, or whether the marshal was legally authorized to sell. But to be frank and explicit on that point, I must instruct you that proof has not been made of this authority of the marshal to sell this lumber at the time and in the manner in which it was done.

Again. There is still a question in regard to two of the defendants, Butler and Colburn, which admits of much doubt. In case you find the right of Brunette made out to bring this action, and in case Whitney is found to have directed the marshal to seize the property under the writ of replevin, and therefore to have made himself liable for the unlawful taking, still, the only proof in the case to bind his co-defendants, is the replevin bond executed by them as sureties. Had the proceedings in the replevin suit been sustained by the United States Courts, I should have less difficulty on this point. As Judge Miller has held them all void, it seems to me their relations to Whitney, and his proceedings in this suit, cannot be regarded as the same. The plaintiff claims that the proof shows that Whitney had commenced an unlawful proceeding to get possession of this property, which he made oath at the time was in Brunette's possession, and that by means of this unlawful proceeding, plan or scheme, he accomplished that purpose, and that the sureties on the bond were aiders or procurers in the commission of the real wrong or trespass in this case. As these points ruled by the

court will probably be carried to the Supreme Court, I am constrained to rule this point also against them, and to hold, as there is much reason to do, that in case you find that Butler and Colburn signed the replevin bond in the United States Court, they are equally liable with him in this suit. The bond has been produced here, purporting to be signed by all the defendants, one as principal and two as sureties; and in the absence of a sworn denial of the execution, the court has held, under the statute, that the execution must be regarded as genuine.

In respect to damages, in case you find the plaintiff entitled to recover, it should be, 1st, the actual cash value of the property when and where it was taken; also such sum as will cover the injury the plaintiff Brunette has sustained by the wrongful taking. The same should cover lawful interest on the value of the property, at least, and it may cover a proper sum to make good his expenses and trouble, and in prosecuting this suit and recovering judgment.

If you find for the defendants, your verdict will be not guilty, or not guilty as to any of them. If you find for the plaintiff it will be that you find the defendants, or any of them guilty, and assess the damages at such sums as the evidence warrants, under the instructions already given you on that point.

Defendants except to the whole charge.

The jury return a verdict against all of the defendants for $11,000.

*Lynde & Randall*, for the plaintiffs in error.

*J. E. Arnold*, for the defendants in error.

*By the Court*, WHITON, C. J. The first question

which presents itself in this case, arises upon the ruling of the Circuit Court in regard to the inadmissibility and effect of the testimony offered by the plaintiff below, to show his title to the property. This was founded solely upon the attachment in the suit commenced in the Circuit Court for Brown county, in which Morrow was plaintiff, and James Christie & Co. were defendants.

The writ of attachment issued in that case was served by the plaintiff, as the under sheriff of John F. Leffrey, sheriff, who was (as is supposed) succeeded in office by the plaintiff. The writ of attachment was defective in not having a return day. It commanded the officer to " attach so much of the lands, tenements, goods and chattels and effects of the defendants, not exempt from execution," as should be sufficient to satisfy the plaintiff's demand, and safely keep the same to satisfy any judgment that might be recovered by the plaintiff; without commanding him to summon the defendant to appear before the court to answer the plaintiff, or specifying any day when a hearing could be had. This omission made the writ clearly defective. The statute which authorizes creditors to proceed against their debtors by attachment of their property, provides that the writ of attachment " shall command the sheriff, or other officer to whom it may be directed, to attach so much of the lands, tenements, goods, chattels, monies and effects of the defendant, not exempt from execution, wheresoever the same may be found within the county, as will be sufficient to satisfy the plaintiff's demand, and safely keep the same to satisfy any judgment that may be recovered in such attachment, and also to summon the defendant, if to be found within the

State, to appear before the court at the time and place to be specified in such writ, to answer the plaintiff; and such writ shall be tested and made returnable in the same manner as other writs issuing out of the court." (*Rev. Stat.*, *chap.* 112, § 4.) It appears by the record of the attachment suit which was introduced in evidence, that the defendants, Christie & Co., made a motion to set aside the writ of attachment, for this, and other alleged objects, and that the defendant made a motion to be allowed to amend the writ, " by inserting therein a command to the sheriff to summon the said defendants, by a day and at a place to be therein specified, to answer the plaintiff, and to make return of the writ." It appears, further, that these motions were considered by the court together, and that the motion made by the defendant was denied, and that the one made by the plaintiffs was allowed on terms. The plaintiff in error insists that the levy made by virtue of this defective writ, was entirely invalid, and gave the plaintiff no title to the property. Upon this subject we give no opinion.

We are satisfied that the judgment must be reversed, on account of the refusal of the judge before whom the cause was tried, to instruct the jury, when requested by the counsel for the defendants below, that " if the jury find that the property in question was the property of the United States, and was sold by the marshal under the directions of the solicitor of the treasury, or by his approval, to Bronquest, and by him to Whitney, the plaintiff cannot recover."

The same instructions, in substance, were asked in another form, but the judge refused to give them, and the defendants excepted. We are of the opinion that

June Term
1854.

Whitney
et al.
vs.
Brunette.

the instructions should have been given. By the expression of this opinion, we do not intend to decide that the testimony satisfies us that the marshal had authority to make a valid sale of the property to Bronquest, nor that the sale by Bronquest to Whitney was valid, as against the creditors of the former. These facts were to be determined by the jury, under the instructions of the court. But the court was requested to instruct the jury, that "if the property was the property of the United States, and was sold by the marshal to Bronquest, and by him to Whitney, the plaintiff could not recover." By the term "sold," as used in the instructions asked for, we think the jury would infer a transfer to Bronquest of the title of the United States to the property, and to Whitney of all the title which Bronquest had to it. The judge was not asked to instruct the jury that the facts established by the testimony showed that these sales of the property were valid, but that the plaintiff could not recover if the property belonged to the United States, and had been lawfully sold by the marshal to Bronquest, and by Bronquest to Whitney. At least, this is probably the construction which the jury put upon the language; and they would therefore infer, that although the sale by Marshal to Bronquest was valid, and also the sale by him to Whitney, still the plaintiff might recover.

This, as the matter appears to us, is incorrect. Whitney claimed the property by virtue of a sale from Bronquest, and Bronquest claimed the property by virtue of a previous sale from the marshal. Now if the property belonged to the United States, and was lawfully sold by the marshal to Bronquest, who made a sale of it to Whitney, it seems clear that the

June Term
1854.

Whitney
et al.
vs.
Brunette.

plaintiff could not lawfully claim it by virtue of the attachment made afterwards. We do not see but the same consequence must follow, even if the marshal had no authority to sell the property, if it is admitted that the property belonged to the United States, because in that case the plaintiff could acquire no title to it by the attachment.

We are aware that it may be claimed by the plaintiff that he obtained possession of the property by means of the attachment, and that this is sufficient to enable him to maintain the action against the defendants, unless they are the owners of it, even if it did not belong to Christie & Co., the defendants in the attachment suit. It is undoubtedly true that the mere possession of chattels will, in general, enable a person to maintain trespass against a mere stranger or wrong doer. But it may be doubted whether Whitney, who claims by virtue of a sale from Bronquest, can be regarded in the light of a mere stranger. In actions of trespass, it is competent for the defendant, even under the general issue, to show that the plaintiff has no title to the goods. 2 *Greenleaf Ev.* § 625; 1 *Chit. Pl.* 538, *ed. of* 1833. Upon this subject, however, we give no opinion.

It appears by the bill of exceptions, that the judge instructed the jury that it was immaterial whether the proof showed that the property belonged to the United States or not, or whether the marshal had authority to sell. His language is as follows :

"I regard it as immaterial to the parties here, whether there was or was not satisfactory proof of property in the United States, or of competent authority on the part of Cotton, the U. S. marshal, to sell. You may hold that the title and authority to

JUNE TERM
1854.

Whitney
et al.
vs.
Brunette.

sell are sufficiently proved for the purposes of this trial. In order to give Whitney a title to the property, as between himself and Cotton, and as between himself and Bronquest, the evidence is probably sufficient. But though you find all these facts, there is another question as to the title of Whitney as against Brunette. Brunette, as you have seen, claims under a writ of attachment, in his hands as sheriff, against Bronquest. The sale from Bronquest to Whitney, though good as between themselves, was not binding against the creditors of Bronquest, unless there was an actual and continued change of possession Unless, therefore, you find it proved that Whitney got actual possession of the property under his purchase before Brunette made his levy, the levy would be good against him, if it was in other respects valid. When I speak of Whitney's getting actual possession, I mean that he, or some one in his behalf, must have done that in respect to the property, which would have made a sheriff's possession good under a levy, as I have stated. He must have had a delivery or tender of the property made to him, he being at the time present where the property was."

When the judge speaks of Brunette as claiming the property under a writ of attachment in his hands against Bronquest, we suppose he alludes to the fact that Bronquest was one of the firm of Christie &. Co., against whose property the writ of attachment before mentioned issued.

We are of the opinion that the charge of the judge was erroneous, admitting that Brunette is to be regarded as occupying the position of a creditor of Bronquest.

It was necessary that the sale to Whitney should

June Term
1854.

Whitney
et al.
vs.
Brunette.

be accompanied by an immediate delivery, and followed by an actual and continued change of possession of the property sold in order to make the sale valid, even as against the creditors of Bronquest. The statute (*Rev. Stat.*, *chap.* 76, § 5) provides that unless this immediate delivery is made, and this change of possession take place, and is continued, the sale is presumed to be fraudulent and void as against the creditors of the vendor, or subsequent purchasers in good faith, and shall be conclusive evidence of fraud, unless it shall be made to appear on the part of the persons claiming under the sale, that it was made in good faith, and without any intent to defraud such creditors or purchasers. It will be seen that the failure to deliver the property at the time of the sale, and the fact that the sale was not followed by an actual and continued change of possession, is not conclusive evidence of fraud as against the creditors of the vendor. The statute permits the vendee to rebut the presumption of fraud, by showing that the sale was made in good faith, and without any intention to defraud the creditors of the vendor, or purchasers. But as the matter was stated to the jury by the judge, the failure of Bronquest to deliver the property at the time of the sale, and the failure of Whitney to take and retain possession amounted to conclusive evidence that the sale was fraudulent. The jury should have been instructed that the presumption of law was, that the sale from Bronquest to Whitney was fraudulent and void, as to the creditors of the former, unless it was accompaied by an immediate delivery, and was followed by an actual and continued possession of the property sold, and that these facts were conclusive evidence

of fraud unless the testimony satisfied the jury that the sale was made in good faith and without any intent to defraud the creditors of Bronquest. The jury should have been permitted to find (if in their opinion the testimony proved it,) that the sale was made in good faith, and not with any intent to defraud the creditors of Bronquest, notwithstanding the failure of Whitney to take and retain the possession of the property, and the presumption of fraud arising therefrom.

The judgment of the court below must therefore be reversed, and a new trial awarded.