VAL ZIMMERMANN CORPORATION, Plaintiff-Respondent,

v.

Curtis J. LEFFINGWELL, Defendant-Appellant-Petitioner,

Thomas B. BRUFACH, Defendant.

Supreme Court

*No. 80–1646.  Argued March 3, 1982.—Decided April 27, 1982.*

(Also reported in 318 N.W.2d 781.)

For the defendant-petitioner there was a brief by *James E. Kenny* and *Frank & Kenny* of Milwaukee, and oral argument by *James E. Kenny*.

For the plaintiff-respondent there was a brief and oral argument by *Henry J. Paul* of Wauwatosa.

WILLIAM G. CALLOW, J. This is a review of an unpublished June 4, 1981, decision of the court of appeals which affirmed an August 28, 1980, amended judgment of Milwaukee county circuit court Judge Laurence C. Gram, Jr., granting summary judgment in favor of the holder of a promissory note against the indorser and granting the indorser indemnification against the maker of the note.

The facts in this controversy are not in dispute. On July 8, 1977, Thomas B. Brufach executed a promissory note payable to defendant Curtis J. Leffingwell in the sum of $8,000, plus interest at 9 percent per annum. The note called for monthly payments of $101.35 for a term of five years, with the entire unpaid principal balance due and payable on August 10, 1982. The note contained an acceleration clause and was secured by a mortgage on certain real property in the city of Milwaukee.

On January 17, 1978, Leffingwell indorsed the note as follows: "PAID [sic] TO THE ORDER OF: VAL ZIMMERMANN CORP. WITH RECOURSE, dated 1/17/78." The underlying mortgage was also assigned to the plaintiff, Val Zimmermann Corp. (Zimmermann). In con-

sideration for this transfer, Leffingwell received $5,500. At the time of this indorsement and transfer, there was a balance due on the note in the amount of $7,747.21, with interest fixed at 9 percent per annum. Subsequent to the indorsement and transfer of the note to Zimmermann, there was a fire on the mortgaged property. Proceeds in the amount of $1,750 received from the fire insurance settlement were credited against the unpaid principal balance of the note.

Brufach made payments directly to Zimmermann after the note was transferred. However, Brufach fell behind in his payments during 1979 and made no further payments after February 22, 1980. Zimmermann sent letters to Brufach and Leffingwell on May 20, 1980, demanding that they pay the note. When they failed to pay, Zimmermann commenced this action on June 4, 1980, naming both Brufach and Leffingwell as defendants and claiming that the unpaid principal in the amount of $5,269.11 was due him, along with accrued interest and attorney fees.

Both defendant Leffingwell and plaintiff Zimmermann sought summary judgment in the trial court. Leffingwell argued that he never intended to become liable for payment of the note if Brufach defaulted and that his indorsement transferred title to the note outright, without a right of recourse. Leffingwell has never explained the significance of or reason for his signing the note "with recourse." He further contended that Zimmermann had improperly delayed presentment of the note and had accepted payments from a third party, so that even if Leffingwell had become a guarantor of the note, he should be released. In the alternative, Leffingwell argued that the transaction was in substance a loan, the repayment of which should not be enforced because the terms of the loan violated Wisconsin's usury laws.

Zimmermann argued in response that the transaction was a sale of commercial paper governed by the Uniform Commercial Code, Chapter 403, Stats. 1975. Zimmermann claimed that by indorsing the note, "with recourse," Leffingwell guaranteed payment of the note, and therefore Zimmermann is not obligated to proceed against Brufach prior to instituting suit against Leffingwell for the unpaid balance.

Finding no material issues of fact, the trial court granted summary judgment in favor of Zimmermann against Leffingwell for the amount demanded, together with actual costs and interest to the date of judgment, for a total of $5,484.51. The trial court also granted Leffingwell judgment of indemnification in the same amount against Brufach, who has not made an appearance in this action.

On appeal, the court of appeals concluded that Leffingwell's indorsement and transfer of the note "with recourse" constituted a specific agreement whereby Leffingwell became liable for the unpaid principal amount of the note when the maker defaulted. The court of appeals ruled as a matter of law that the transaction was not a usurious loan. Finding proper notice of dishonor and demand and no material issues of fact, the court of appeals affirmed the judgment of the trial court.

The issue before this court involves the legal effect of the January 17, 1978, indorsement. The question presented is whether Leffingwell's contract of indorsement, by which the note was transferred for less than its face value, was a sale of the note, with recourse, or a loan which is subject to the Wisconsin usury statutes.

Leffingwell argues that the January 17, 1978, transaction must be construed in one of three ways. First, the indorsement could be deemed an outright sale or transfer of title to the note from Leffingwell to Zim-

mermann. Leffingwell claims that, if this construction is adopted, he has been eliminated from the transaction and has no further liability to Zimmermann for repayment of the note.

Second, a transaction of this nature could be viewed as a conditional sale, whereby the transferor agrees that if the maker defaults he will repay to the purchaser his purchase price, plus accrued interest, but minus any payments from the maker credited to principal. Leffingwell argues that this transaction was not a conditional sale because there is no evidence in the record of such an agreement at the time the note was transferred. He also contends that, because Zimmermann elected to attempt to recover the adjusted, unpaid principal amount at the time of the transfer ($7,747.21 minus payments from the maker credited to principal) rather than the adjusted purchase price ($5,500 minus payments from the maker credited to principal), Zimmermann should be estopped from claiming that a conditional sale actually occurred.

Third, Leffingwell argues that, if he is liable to Zimmermann for the adjusted, unpaid balance on the note, as Zimmermann claims, the transaction must be construed as a loan. Leffingwell contends that, if he must repay not only the amount advanced to him when he indorsed the note but the entire unpaid balance of the note (minus payments from the maker credited to principal), the note was merely collateral for the loan of the $5,500 advanced when he transferred the note, and the amount by which the note was discounted should be deemed to be extra interest. Leffingwell concludes that, even if this "extra interest" is spread out over the entire remaining term of the note, the total interest provided for by the indorsement or loan arrangement exceeds the statutory 12 percent limit on interest existing at the time of the indorsement. Therefore, if Leffing-

well must repay the amount Zimmermann claims is due, the transaction should be deemed to be a usurious loan. A finding of usury would preclude Zimmermann from collecting $2,000 of the unpaid principal and all of the interest. Sec. 138.06, Stats. 1975.

In response to Leffingwell's claim that the transaction was in substance a loan, Zimmermann urges this court to distinguish the present transaction from the typical loan arrangement which involves an absolute and unconditional promise to repay the amount advanced. Zimmermann contends that, in the instant case, the indorser's liability was contingent upon default and notice of dishonor.

Initially, we note that sec. 403.414(1), Stats. 1975, provides that, unless an indorsement specifies otherwise, an indorser, upon dishonor and notice of dishonor, must "pay the instrument according to its tenor at the time of his indorsement." Accordingly, the Uniform Commercial Code provides that the transferor who merely signs his name on the back of an instrument assumes liability for repayment of the adjusted, unpaid balance upon the maker's default. In the instant case all doubt with respect to the intention of the parties at the time this note was transferred is removed by the express terms ("with recourse") of the indorsement.

Due to the absence of any allegations or evidence that there was an agreement between the parties to the contrary, we conclude as a matter of law (as did the court of appeals) that by indorsing the note "with recourse" Leffingwell expressly intended and provided that, upon default and notice of dishonor, he would repay the note according to its tenor at the time of his indorsement. This means that Leffingwell became liable for the unpaid balance at the time the note was transferred, minus payments from Brufach credited to principal, rather

than the adjusted purchase price. Accordingly, we reject the possibility that the indorsement and transfer of the note was a sale without recourse or a conditional sale as those terms have been used by Leffingwell.

We turn to Leffingwell's third alternative proposition —that the transaction was in substance a usurious loan. The language governing the applicability of the Wisconsin statutes regulating rates of interest provides:

"[N]o person shall, directly or indirectly, contract for, take or receive in money, goods or things in action, or in any other way, any greater sum or any greater value, for the loan or forbearance of money, goods or things in action than: [12 percent per annum]." Sec. 138.05(1), Stats. 1975.

We must decide whether Zimmermann directly or indirectly contracted for any greater sum for the loan or forbearance of money than 12 percent per annum, or in other words, whether the indorsement and transfer of the note was an indirect, usurious loan.

In *Mortgage Associates, Inc. v. Siverhus*, 63 Wis. 2d 650, 656, 218 N.W.2d 266 (1974), we reiterated the definition of usury this court has adopted which reads as follows:

" 'The definition of usury imports the existence of certain essential elements generally enumerated as (1) a loan or forbearance, either express or implied, of money, or of something circulating as such; (2) an understanding between the parties that the principal shall be repayable absolutely; (3) the exaction of a greater profit than is allowed by law; and (4) an intention to violate the law. The presence of these elements, infallibly indicates usury irrespective of the form in which the parties put the transaction; on the other hand, the absence of any one of them conclusively refutes the claim of usurious practice. In order that a transaction be considered usurious, these elements must exist at the inception of

the contract, since a contract which in its inception is unaffected by usury can never be invalidated by any subsequent usurious transaction. It is the agreement to exact and pay usurious interest, and not the performance of the agreement, which renders it usurious. The test to be applied in any given case is whether the contract, if performed according to its terms, would result in producing to the lender a rate of interest greater than is allowed by law, and whether such result was intended.' " (*Quoting* 55 Am. Jur., *Usury,* sec. 12 (1946) ).

Although we have on occasion found that an intent to evade the law could be conclusively presumed from the surrounding facts,[1] the burden of clearly proving the existence of each of the four essential elements of a usurious transaction rests upon the party raising the defense of usury or attempting to recover the excessive interest paid.[2] *Randall v. Home Loan & Investment Co.,* 244 Wis. 623, 631, 12 N.W.2d 915 (1944) ; *Bauer v. Franklin State Bank,* 216 Wis. 507, 511, 257 N.W. 456 (1934) ; *Friedman v. Wisconsin Acceptance Corp.,* 192 Wis. 58, 60, 210 N.W. 831 (1927). When examining a potentially usurious transaction, this court will look to the substance rather than the form of the transaction. *State v. J.C. Penney Co.,* 48 Wis. 2d 125, 137, 179 N.W. 2d 641 (1970) ; *Friedman v. Wisconsin Acceptance Corp., supra* at 60. Accordingly, whether a transaction has been proven to be a usurious loan has traditionally been considered a question of fact. *Randall v. Home Loan & Investment Co., supra* at 631; *Bauer v. Franklin State Bank, supra* at 511.

In *Becker's Investment Agency v. Rea,* 63 Minn. 459, 462–64, 65 N.W. 928 (1896), the court stated:

"If A, for a debt actually due to him, holds the note of the debtor, and discounts, indorses, and delivers it to

---

[1] *Grant v. Merrill,* 36 Wis. 390, 393 (1874).

[2] *See:* Sec. 138.06 (3), Stats.

B at a rate of discount greater than the rate of interest allowed by law, it is not necessarily a loan from B to A, in which the note was delivered to B as collateral security. The mere fact that A indorses the note does not necessarily stamp the transaction as a loan. The trial court or jury may find, from all the circumstances, that it was in fact a loan, and that the form of the transaction was merely a device to evade the usury law. All the courts agree that the transfer of such a note without any obligation on the part of the transferor to pay the same is merely a sale of a chattel, and may be made for any price the parties agree upon. But when the transferor indorses the instrument, so that he is conditionally liable to pay the same, different courts take four different positions: (1) That the transaction is usurious, and both the indorsement and the transfer are vitiated, so that the indorsee cannot sue his indorser, or any prior party, on the note. (2) That the indorsement is usurious, but the transfer is a valid sale, and that while the transferee cannot maintain a suit against the indorser, he may against all prior parties. (3) Another class of cases, instead of holding the indorsement to be usurious, hold that it is made merely for the accommodation of the transferee in connection with a valid sale, and that, while the transferee cannot maintain a suit against the indorser, he may against all prior parties. (4) That the transaction is not usurious, and that the transfer is not only a valid sale, but the indorser is also liable to the transferee.

". . . There are many facts and circumstances from which the trial court might have found the transactions to be merely a loan, or series of loans, but the court has not found, and we are of the opinion that the finding is not contrary to the evidence; in other words, that it is a question of fact, from all the evidence,—not merely a question of law,—whether or not these transactions were sales of the notes, or a series of loans, in which the notes were delivered as collateral security." (Citations omitted.)

Much more recently the California district court of appeals stated:

"But if it be conceded (as orally argued by appellants' counsel) that some part of said $62,379.41 derived from purchases made with recourse, it does not follow as matter of law that those transactions were loans or usurious ones. Milana, supra, does not so hold. It is quite consistent with the rule stated in O.A. Graybeal Co. v. Cook, 111 Cal. App. 518, 531, 295 P. 1088, 1093, 'that the giving of a guaranty is simply an item of testimony or evidence which the trial court may consider in determining whether the transaction is in fact a loan, or, what it purports to be, a purchase and sale of' a chose in action. Upon ample evidence the trial judge drew the inference of a bona fide sale in the case before us. Coast Finance Corporation v. Ira F. Powers Furniture Co., 105 Or. 339, 209 P. 614, 615, 24 A.L.R. 855: 'When the holder of an instrument, such as the conditional sales contract held by defendant, transfers the instrument at a discount and is required to indorse or otherwise guarantee it so that the vendor becomes liable contingently to pay the purchaser at a future day a sum greater than that received with legal interest, the authorities present different views. The great weight of authority is that such a transaction should be regarded as a valid sale of a chattel with a warranty of soundness, and the purchaser is allowed to enforce the obligation to its full extent against his own indorser and all prior parties. 39 Cyc. 933.' That this represents the weight of authority appears from Annotation in 165 A.L.R. at page 691; 91 C.J.S. Usury sec. 19a(3), page 595; 66 C.J. sec. 85, page 188; 55 Am. Jur. sec. 26, page 344; sec. 29, page 346."

*Refinance Corporation v. Northern Lumber Sales, Inc.,* 163 Cal. App. 2d 73, 329 P. 2d 109, 113–14 (1958).

Turning to decisions involving allegedly usurious loans rendered in Wisconsin, we must first consider an early case, *Cowles v. McVickar,* 3 Wis. 637 (*725) (1854), which has been cited and heavily relied upon by Leffingwell in his brief to this court. So that the facts of *Cowles* may be placed in their proper setting, it should be noted that, although the citizens of the terri-

tory and then the state of Wisconsin had been subject to a law enacted in 1839 which limited interest rates to 12 percent per annum,[3] this law was replaced in 1849 by one allowing " '[a]ny rate of interest agreed upon by parties in contract, specifying the same in writing.' "[4] In 1851, however, the legislature gave further attention to the matter of interest rates and reenacted a legal limit on interest rates of 12 percent.[5]

The notes which were the subject of *Cowles* were executed during this two-year period when there was no statutory limit on the interest rates specified in contracts. On April 1, 1850, Gardiner executed two promissory notes, each in the amount of $250, made payable to McVickar or order. The notes bore interest at 30 percent per annum until maturity and 50 percent thereafter. The maturity date of the notes passed, and they remained unpaid. Sometime later, when the total amount of principal and interest due under the notes exceeded $800, the plaintiff Cowles gave McVickar $550 in exchange for the two notes. McVickar indorsed (signed his name upon) the back of each of the notes at the time they were transferred. After demanding payment from the maker of the notes with no satisfaction, Cowles informed McVickar that he considered McVickar liable for payment of the notes but would "receive back what they had paid to him." 3 Wis. at 639 (*728). When McVickar refused, Cowles brought suit, based upon McVickar's implied-in-law contract of indorsement which he had made by personally indorsing each of the notes. Cowles did not attempt to recover the entire amount of the notes, however, but only his purchase price, plus legal interest from the date of transfer.

---

[3] Wisconsin became a state in 1848.

[4] The stormy history of Wisconsin's usury laws is described by Friedman, *The Usury Laws of Wisconsin: A Study in Legal and Social History*, 1963 Wis. L. Rev. 511, 544.

[5] *Id.* at 548–49.

McVickar contested Cowles' attempt to collect the notes from him on the grounds that, if he were liable for repayment of the notes, the transaction was, as to him, a usurious loan.[6] With respect to this issue, the trial court instructed the jury as follows:

" 'The indorsement, in form, is good in law to bind the defendant as indorser. But if it was not so intended by the parties at the time, it should be construed as a mere form of passing his interest, and would not make the defendant liable in this suit. You will look at all the facts in the case, and determine what the intention was. The indorsement is *prima facie* evidence of an intention to make the defendant liable as an indorser, and must be so construed unless the proof shows you that there was a different intention.

" 'Again, the defendant contends, that if the indorsement was so made as to bind the defendant as indorser, then the transaction between him and the plaintiffs was usurious, and that no action can be founded upon it. I have once passed upon this point, in a former suit between these parties, and I now see no sufficient reason to change my decision. The indorsements of the notes carried to the plaintiffs the right to collect from Gardiner, or from the collateral securities, the full amount of the face of the notes, which was more than five hundred and fifty dollars, the sum paid to the defendant, and if they should fail to collect this larger sum, then they had the right, by the contract, to recover from the defendant, the actual amount paid to him, with seven per cent interest. The transaction was, in this view of the indorsement, in my opinion usurious, and a violation

---

[6] Wisconsin's usury statute, in force when the note was indorsed, read as follows: " 'Sec. 4. All bonds, bills, notes, assurances, conveyances, all other contracts or securities whatever (except bottomry and respondentia bonds and contracts) and all deposits of goods or other things whatsoever, whereupon or whereby there shall be reserved, or taken, or secured, or agreed to be reserved or taken any greater sum or value for the loan or forbearance of any money, goods or other things in action than is above prescribed, shall be void,' etc." *Cowles v. McVickar*, 3 Wis. 637 (*725), 641 (*730) (1854).

of the law existing at the time it took place, and no recovery can be had against the defendant, as indorser of the note, for these reasons.' " 3 Wis. at 639–40 (*728–29).

The jury decided that the contract of indorsement gave Cowles the right to collect the notes from McVickar and was, therefore, a usurious loan. On appeal to this court, the sole issue concerned the propriety of the trial court's instruction to the jury. In response to Cowles' arguments, that the trial court should not have told the jury that the transaction was a loan rather than a sale of the notes with a personal guaranty, this court stated:

"A sale of a bill or note may be made for less than its face, without taint of usury, provided it be in good faith, and without design to evade the law. But in such case, the vendor of the bill or note does not make himself liable for its ultimate payment. The indorsement or guaranty of a bill or note, by which the party renders himself liable for its payment is incompatible with a simple sale. . . .

". . . [where] a note is transferred by the payee, and indorsed by him in the usual manner, or the payment guarantied by him, in consideration of a certain sum paid or advanced by the indorsee, the transaction is essentially a loan. . . . It is said that I may sell a horse, worth one hundred dollars, for eighty dollars, and agree to repurchase the horse in one year, in as good condition for eighty dollars and seven per cent interest, and this would not be usury; and upon the same principle one may sell a note for less than its face, and agree to pay back the amount received for it, with seven per cent interest, without incurring the penalty of usury. But such is not the contract of indorsement. The latter has a definite character well known to the law, which is to pay the amount of the note at maturity, in case of nonpayment by the maker and notice of dishonor.

"When a person transfers a note for a sum less than its face and legal interest, and indorses, or guaranties or otherwise becomes liable for its payment, it is a transac-

tion by which the indorsee gets more than the legal rate of interest, and therefore, *as between the immediate parties to the contract of indorsement, usurious."* 3 Wis. at 641–44 (*730–33) (emphasis in original).

The court's reasoning may be summed up as follows:

"If [the contract] was not one of mere bargain and sale, but a contract of indorsement, its legal effect was, to create a different relation between the parties than that of vendor and vendee, viz: that of drawer and payee of a bill of exchange, and hence the amount of consideration received, and the amount stipulated to be paid or secured, are such that *mere computation* brings the transaction within the usury act of 1851." 3 Wis. at 642 (*731) (emphasis added).

The *Cowles* court agreed with the trial court that, unless the indorser could demonstrate that the indorsement was intended only to transfer title, without recourse, the indorsement was, as a matter of law, a loan and subject to the usury statutes.

Seven years later in *Otto v. Durege,* 14 Wis. 621 (*571) (1861), this court considered the transfer of an *unmatured* note, such as the one transferred from Leffingwell to Zimmermann, and questioned the applicability of the conclusion reached as a matter of law in *Cowles.* In *Otto* the plaintiff executed a promissory note for $200, plus interest at the highest legal rate (12 percent), and delivered it to Winkler, asking that Winkler sell it for him. Winkler sold the note to Von Deutsch, as agent for defendant Durege, at the discounted price of $182.50. This note also went unpaid, and judgment was rendered in favor of Durege against Otto for the amount of the note, plus interest from the date it became due and actual costs. Otto appealed, claiming that the note was—between himself and Durege—usurious and therefore void. In response to Otto's arguments, this court stated:

"Negotiable paper, like any other property, may be bought and sold below its real value and for less than its face, without imputation of usury, although the purchaser thereby obtains much more than legal interest for the use of his money. The penalties and prohibitions of the statute are aimed at the receiving or contracting to receive a greater rate of interest than that prescribed by it upon the *loan* or *forbearance* of money, or other things, and do not apply to the *sale* of a note or any other vendible commodity, which, when in good faith intended as such, may be sold and transferred for such price as may be fixed by the agreement of the parties. The only limitation upon this principle, if it may be properly so called, is that made necessary for the purpose of giving effect to the spirit and intent of the law against usury, by preventing the parties from resorting to the *form* of a sale as a cloak or cover for what is in reality a usurious loan. In such cases the law looks behind the shifts and devices of the parties, and, according to the fact, declares the transaction to be a *loan* and not a *sale*. But in order to do this it must appear that the supposed purchaser had notice, either actual or derivable from the circumstances of the case, of the trick or device resorted to, and therefore, consented to it; otherwise he will not be divested of the character and rights of a purchaser. For usury is a matter of intention, and to render a contract usurious both parties must be cognizant of the facts constituting the usury, and have a common purpose of evading the law. . . . Having advanced his money in good faith as a purchaser, the law will not permit the secret intentions and motives of the other parties to transform it into a loan; for that would be to make the unlawful purposes of the guilty, instruments for the destruction of the innocent." *Id.* at 623–24 (\*573–74) (emphasis in original).

Eleven years following *Otto*, we cast further doubt upon *Cowles'* applicability to the dispute between Leffingwell and Zimmermann when we decided *Armstrong v. Gibson*, 31 Wis. 61 (1872). In *Armstrong* an individual executed a note and mortgage for $1,000, plus interest at the highest legal rate (10 percent), in favor of

plaintiff Armstrong who later indorsed and transferred the note and mortgage to the defendant for $950. Armstrong expressly guaranteed payment of the entire amount of the note, principal, and interest. In response to the plaintiff's argument that the entire transaction between himself and defendant Gibson should be deemed usurious and void, the court first held that, regardless of whether the *guaranty* was void for usury, the *indorsement* operated to pass title to the indorsee who could collect from the maker or foreclose the mortgage. The court cited *Cowles* in support of its resolution of this issue. *Id.* at 65.

The court then addressed the question whether the plaintiff was entitled to have his guaranty cancelled on the ground that it was usurious, stating:

"Under these circumstances, although the guaranty *may* be usurious, and although the defendant *might* successfully defend himself upon that ground, should he be sued upon it, a court of equity ought not to interfere to decree a cancellation thereof at the suit of the plaintiff, but should leave him to his defense in an action at law, brought against him on the contract of guaranty." *Id.* at 66 (emphasis added).

The court declined to rule, based upon *Cowles,* that the sale of an unmatured note, bearing the highest legal rate of interest at a discount, was, upon "mere computation" of the amounts involved, usurious. The court properly implied that the usurious character of a transaction is a question of fact, to be proven by consideration of all the relevant circumstances. *Bauer v. Franklin State Bank,* 216 Wis. at 511.

The question addressed in dicta in *Cowles* and in *Otto* and reserved in *Armstrong* is squarely presented to this court for the first time today. The issue is whether the indorsement, guaranty, and transfer of an unmatured, interest-bearing instrument constitutes, as between the

indorser and indorsee, a loan which should be as a matter of law subject to Wisconsin's usury statutes.[7]

Although there is facial similarity between the facts in *Cowles* and the transaction before us, we do not consider *Cowles* controlling upon our resolution of the instant controversy. We stated in *Cowles* that when an indorsee guarantees a note, "[i]t is the same as though the indorser or guarantor had given his own note. He becomes liable for the repayment of the money at all events." 3 Wis. at 643 (*732). That statement holds true for the notes transferred in *Cowles* which had been indorsed and transferred *after they had matured.* The transferee of a note indorsed after its maturity need not proceed against the maker of the note prior to attempting to collect the same from the indorser. The indorser, after maturity, becomes the equivalent of a co-obligor who is *immediately* liable for repayment of the entire

---

[7] We would note in connection with this point that there are two other types of transactions which are related to the sale of discounted notes but which are not involved in this case. The first is an original issue discount, where the original maker of the note promises to repay $1,000, plus interest at the legal rate, but receives only $950 from the payee. Unless the amount promised to be repaid, but withheld, is meant to cover insurance or other allowable fees, and clearly denominated as such, the transaction is plainly usurious. *Harris v. Wicks*, 28 Wis. 198 (1871); *McFarland v. Carr*, 16 Wis. 276 (*259) (1862); Secs. 422.201(5)(b) and 421.-301(20), Stats. 1975. It is different where, as here, value for the note has once been given. *See:* 45 Am. Jur. 2d *Interest and Usury*, secs. 138, 144-53 (1969).

The second situation involves a sale of goods where, for example, the seller offers to accept $1,000 at the time of sale, or $2,000 in monthly installments over ten years. Where the difference in terms is a true time/price differential, and not excessive interest on the unpaid purchase price, the transaction will not be found usurious. *Cf. Mortgage Associates, Inc. v. Siverhus*, 63 Wis. 2d 650, 218 N.W.2d 266 (1974) (time/price differential); with *State v. J.C. Penney Co.*, 48 Wis. 2d 125, 179 N.W.2d 641 (1970) (excessive interest).

note to all subsequent transferees.[8] In contrast, the note transferred by Leffingwell specified a due date over four and one-half years from the date of transfer. Leffingwell's liability was entirely contingent upon future events, such as default, acceleration, and notice of dishonor.

In *Cooper v. Tappan*, 9 Wis. 333 (*361), 340 (*368) (1859), we noted that the second element of usury, an understanding that the principal must be repayable absolutely, cannot be avoided by the interposition of an illusory contingency. This certainly is not the case here, however. So long as Brufach continued making payments, Leffingwell incurred no liability to Zimmermann. Had Brufach continued making the scheduled payments, or had Zimmermann received satisfaction by foreclosing upon the real estate which secured payment of the note[9] rather than suing Leffingwell, Leffingwell would never have been required to pay any portion of the note. Finally, although the collateral here has been impaired,[10] the indorser will usually have resort to the collateral, if any, which secured the original note, as well as his right to indemnification from the maker for any amount the indorser must pay to the indorsee.[11]

We conclude that, because of the contingent nature of the indorser's liability to the indorsee, the mere fact

[8] *See:* Secs. 403.501(4) and 403.414(2), Stats. 1975.

[9] Paragraph 11 of Leffingwell's affidavit in support of his motion for summary judgment asserts "[t]hat the Plaintiff has not sought to foreclose said mortgage and said property remains in the hands of a third party who is committing waste thereon."

[10] The nature and extent of the fire at the real estate which secured the note involved here has not been described by either party other than by statements that there was "a fire."

[11] Leffingwell was granted a default judgment against the maker, Brufach, in the same amount as Zimmermann's judgment against Leffingwell.

that an unmatured, interest-bearing note has been indorsed and transferred does not establish, as a matter of law, that there was an understanding between the parties that the amount due on the note shall be repayable absolutely by the indorser.

As this case is before us on review of the entry of summary judgment, we must at this time examine all of the allegations in the materials submitted to the trial court by Leffingwell to determine whether there are other facts which, if construed in the manner most favorable to him, would justify a finding of a usurious loan. *Kraemer Bros. v. United States Fire Ins. Co.*, 89 Wis. 2d 555, 567, 278 N.W.2d 857 (1979).

Leffingwell, however, has not alleged in his answer or affidavit in support of his motion for summary judgment and opposition to Zimmermann's motion for summary judgment that there are facts other than those we have recited above which, if proven, would lend further support to the conclusion that the principal was to be repayable absolutely by Leffingwell or that the transaction was part of an overall scheme to evade the interest rate restrictions, two of the four essential elements of a usurious loan. *Mortgage Associates, Inc. v. Siverhus*, 63 Wis. 2d 656. Instead, Leffingwell has relied upon the amount of the discount and the amount demanded of him as proof that the transaction was, as to him, a usurious loan.

We have carefully considered the amounts involved in the transaction between the parties here, as well as their relative positions with respect to the transfer, and we have concluded that all of the facts alleged, even when construed in the manner most favorable to Leffingwell, are insufficient to give rise to an inference of a creditor-debtor relationship between the parties or

an intent to evade the law.[12] *Mortgage Associates, supra.* The sale of an interest-bearing note at a discount will not be deemed usurious unless its transfer, viewed in light of all the surrounding facts and circumstances, is found to be a cloak or cover for what is in reality a usurious loan. *Otto v. Durege,* 14 Wis. at 623–24 (*573–74). *See also:* 31 A.L.R.3d 763 (1970).

When the note was transferred, Zimmermann agreed to accept Leffingwell's personal guaranty of payment as part of the consideration for the payment of $5,500. By indorsing the note, Leffingwell retained the risks of collection from Brufach and assumed the risk of an additional loss up to $2,247.21, the amount of the discount, if Brufach immediately defaulted. This risk of additional loss was entirely contingent at the time of indorsement, however, and the unreasonableness of the assumption of this risk cannot be translated into an unreasonable rate of interest in order to nullify Leffingwell's obligations under a potentially improvident contract.

Given the nearly universal adoption and uniformity of the Uniform Commercial Code, we must assume the typical indorser is aware of these risks which accompany the maker's default. Certainly, under the facts of this case, where the indorsement expressly provided that the transfer was with recourse, we must conclude that Leffingwell knowingly accepted these obligations as guarantor until Brufach satisfied the debt evidenced by the note.

Although we are confident the transaction in the instant case was free from coercion or deception, we recognize the possibility that the sale of notes at a discount could be intentionally structured so as to evade Wisconsin's statutes governing interest rates. The enactment of the Wisconsin Consumer Act, which takes prece-

[12] *See:* Sec. 802.08(3), Stats.

dence over the less restrictive usury statutes whenever it applies, has reduced the likelihood of credit consumers suffering abuse in this manner. *See:* secs. 138.05(6), 422.201(5)(b), and 421.301(20), Stats. 1975. To the extent that the Consumer Act offers protection for the least sophisticated and most vulnerable individuals, it has reduced the need for the application of the usury statutes in many instances. Furthermore, if the dealings among all the parties involved, considered as a whole, appear to be a scheme to evade Wisconsin's interest rate restrictions, we will not hesitate to find the terms of the transaction usurious and subject to the statutory penalties. *The First National Bank of Milwaukee v. Plankinton,* 27 Wis. 177 (1870).

We have also been influenced in our resolution of this case by certain realities of the commercial world. If indorsers are not able to guarantee the notes they sell at a discount because the discount is deemed to be interest making the transaction usurious, then once a note's fair market value falls below a certain level, it will no longer be negotiable by the standard form of indorsement (indorsement with recourse). Furthermore, if the note bears interest near or at the legal rate, as many notes do, even a slight drop in its relative market value would prohibit further transfer of the note with recourse. The personal guaranty is often essential to the sale of a note because indorsees are understandably hesitant to accept a note when it is impractical or impossible to investigate the status of the maker.

Because Leffingwell's liability to Zimmermann was, at the time the contract of indorsement was made, contingent upon Brufach's default, and because Leffingwell has a right to indemnification from Brufach, we conclude that the indorsement and transfer of the unmatured note was a sale and not an indirect loan subject to the Wisconsin usury statutes. Because the question

of law we have decided resolves the only material issue raised by the parties' pleadings, motions, and affidavits, the trial court's entry of summary judgment in favor of the plaintiff Zimmermann was proper.

*By the Court.*—The decision of the court of appeals is affirmed.

CECI, J., took no part.